PROVIDENT TRUST COMPANY, a corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 19546.

United States District Court
E. D. Pennsylvania.

Feb. 3, 1959.

Kimber E. Vought, Orr, Williams & Baxter, Philadelphia, Pa., for plaintiff.

Harold K. Wood, U. S. Atty., Philadelphia, Pa., for defendant.

GRIM, District Judge.

This is an action to recover estate taxes which were paid under protest. Two separate matters are involved. The first is a death benefit paid under an employee's retirement plan. The second has to do with dividends declared before, but paid after, death.

Death Benefit

Harry E. Barnett, with whose estate we are here concerned, died testate May 17, 1950. Plaintiff is an executor.

For a long time prior to December, 1943, Barnett owned half the outstanding stock of Atmore & Son, Inc., and was its Secretary-Treasurer. This situation continued until December, 1948, when he sold his stock. He continued thereafter until his death as an employee of the corporation.

On December 15, 1943, Atmore & Son, Inc., adopted an employees' retirement plan whose purposes were stated thus:

" * * * to provide eligible employees with a retirement income at retirement in addition to any income to which they may be entitled under any Federal and State law and which will also provide certain supplemental benefits in event of death, will contribute to the contentment and feeling of security of its em-

ployees and will improve the quality and continuity of their services to the company."

Funds for the payment of retirement income and death benefits were to be provided by a life insurance policy on each participant, or, where insurance was not "readily available", by an annuity contract. The company provided all the money required to administer the plan and for the premiums on the insurance policies and annuity contracts, except that certain major stockholders paid part of the premiums on their policies or contracts.[1] The plan provided that participants had the power to designate and change the person to whom the death benefits were to be paid.

Provision was made whereby the employee on leaving his employment voluntarily might (depending on the length of his participation in the plan) purchase the policy or annuity contract affecting him for its cash value, receive a specified percentage of its cash surrender value, or receive a policy for a reduced amount.

The retirement plan was carried out by means of a trust agreement between the company and three individual trustees. The agreement provided for the creation of a retirement committee whose members were to be appointed by the company's Board of Directors.

As Secretary of the corporation, Barnett signed the original trust agreement and two amendments to it. He was also one of the three trustees and signed the agreement and three amendments to it in that capacity. He was also a member of the retirement committee and was authorized by that committee to sign all policy applications.

Barnett became a participant in the employees' retirement plan. He was uninsurable, and life insurance was not "readily available", to him. Consequently, an annuity contract was obtained from a life insurance company, naming Barnett as the annuitant and his daughter, "if living, otherwise * * * the executors or administrators of the annuitant" as the persons to receive the death benefits. The annuity contract's issue date was December 15, 1943, and its maturity date December 15, 1951, when Barnett would have been 70 years old. The annuity contract provided that if Barnett should die before maturity the total of the premiums paid in to the date of death would go to the named beneficiary. His lifetime monthly income under the contract upon retirement at 70 would have been $28.18. The annual premiums of $524.79 each were paid during Barnett's life. To comply with the 30% rule alluded to in footnote 1, Barnett contributed the following amounts to the payments of the premiums:

| 1943 | $135.57 |
|------|---------|
| 1944 | 135.57 |
| 1945 | 136.40 |
| 1946 | 136.75 |
| 1947 | 137.16 |
| | $681.45 |

Following Barnett's death on May 17, 1950, the death benefit of $3,673.53 was paid to his daughter. This was exactly equal to the six annual premiums paid in, made up of the amounts contributed by Barnett and the company. Plaintiff claims that this amount was not taxable as part of Barnett's estate. The government contends that it was taxable as one or more of the following: a transfer taking effect at death under Sec. 811 (c), a revocable transfer under Sec. 811 (d), proceeds of life insurance under Sec. 811(g) (2), of the Internal Revenue Code of 1939, as amended,[2] 26 U.S.C.A.

---

1. In order to qualify for income tax purposes under Section 165(a) the plan included the following provision:

   "The contributions which are required to provide benefits for employees, each of whom owns, directly or indirectly, more than 10% of the voting stock of the corporation, shall not exceed in the aggregate, 30% of the contributions for all participants under the plan."

2. By Sec. 7 of the Act of October 25, 1949, 63 Stat. 891, and Sec. 404 of the Revenue Act of 1942, 56 Stat. 798.

(I.R.C.1939) Secs. 811(c), 811(d), 811 (g) (2).

Section 811(c) makes taxable any interest in property "of which the decedent has at any time made a transfer * * * intended to take effect in possession or enjoyment at or after his death." In support of its contention that the $3,-673.53 death benefit is taxable under this section, the government cites two cases, Estate of Nevin v. Commissioner, 1948, 11 T.C. 59, and Estate of Leoni v. Commissioner, 7 CCH T.C.M. 759 (1948), and Revenue Ruling 260, 1953—2 Cum.Bull. 262. In each of these there was an agreement whereby the employer was to make periodic payments to the employee following his retirement and upon his death was to pay certain amounts to his widow.

The common element running through these two cases and the Revenue Ruling is that in each of them the employer's obligation to make post-mortem payments was not voluntary but an integral part of a written contract of employment between the employer and employee and that these payments were part of the consideration for the employee's services. Herein lies the distinction between those cases and the case at bar. There is no evidence of the terms under which Barnett was employed by the company, but it is quite clear that the trust agreement does not define any terms of employment. It was, in fact, something quite distinct, and was, in contrast to the situations cited, a method whereby the company voluntarily, and not as performance of any contract, provided inter alia for pension payments to the survivors of those employees who desired to participate. For this reason there was no transfer of property by the decedent, and the death benefit paid is not taxable as a transfer taking effect at death under Section 811(c), to the extent, at least, that it is attributable to contributions made by the company.[3] The tax is levied on property transferred by decedents. It is not levied on property transferred by employers, unless the transfer was made as part of a remuneration agreement between the employer and the employee.

The government stresses the fact that Barnett was 50% stockholder, trustee and retirement committee member, as well as officer and employee, and argues that in substance this made him, rather than the corporation, the transferor. This argument must be rejected because there is nothing in the record (consisting of a stipulation) to show that he dominated or controlled the company, the trustees, or the retirement committee or that in fact he, rather than the company, was the transferor.

That portion of the death benefit, however, which is attributable to the parts of the premiums paid by Barnett, is an altogether different matter. Here the transfer consisted of his payment of a portion of the premiums, and it took effect, as to the daughter, upon his death. To the extent that the death benefit is attributable to amounts paid by Barnett it is includable in his estate for tax purposes and taxable as a transfer intended to take effect in possession or enjoyment at death. "For the purpose of ascertaining the corpus on which an estate tax is to be assessed, what is decisive is what values were included in dispositions made by a decedent, values which but for such dispositions could not have existed," Estate of Rogers v. Commissioner, 1943, 320 U.S. 410, 413, 64 S.Ct. 172, 174, 88 L.Ed. 134.

The government also contends that the death benefit was taxable under Section 811(d) as property "of which the decedent has at any time made a transfer * * * where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power * * * by the decedent * * to alter, amend, revoke, or terminate * * *." As the statute makes clear, that which is taxable under this provision, whatever characteristics it may

3. Plaintiff cites Dimock v. Corwin, D.C.E. D.N.Y.1937, 19 F.Supp. 56, which is not in point because it involved a different statutory provision.

have, is property which has been transferred by the decedent, and no matter what variety of transfer is involved, where there is no transfer there is no tax. What has been said above, therefore, with respect to the existence of a transfer taking effect at death, applies equally to the existence of a revocable transfer. There was a transfer in so far as Barnett's contributions are concerned, and to that extent the death benefit is taxable, since it was subject to Barnett's right to change the beneficiary. It can be taxed as a transfer under either Section 811(c) or 811(d).

There remains to be considered the question of whether, as to that portion attributable to the company's contributions, the death benefit is taxable under Section 811(g) (2) as life insurance. The tax under the words of the statute is imposed on " * * * the amount receivable * * * as insurance under policies upon the life of the decedent * * *."

■ The contract here was not a policy of insurance but was an annuity contract, and this was brought about by the fact that in Barnett's case insurance was not, in the words of the plan, "readily available." An annuity is not insurance. This is emphasized by the separate treatment of these two matters in Sections 2039 and 2042 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 2039, 2042. Since there was no insurance here, Section 811(g) (2) of the 1939 Code does not apply, and that part of the death benefit attributable to amounts paid by the company is not taxable.

### Dividends

At the time of his death, May 17, 1950, Barnett owned stock in Gulf Oil Co. and Fire Association of Philadelphia. Dividends were declared before and paid after his death as follows:

|  | Date Declared | Ex-Dividend Date | Payable Stockholders of Record | Date Payable | Dividend Received |
|---|---|---|---|---|---|
| Gulf Oil | Apr. 25 | May 17 | May 19 | June 10 | $37.50 |
| Fire Association | May 12 | May 16 | May 19 | June 30 | $20.80 |

The stipulation is silent as to the values of these stocks on any date except August 15, 1950, when they were sold.

These dividends are includable in the gross estate and taxable, if at all, under Sec. 811(a) as property "to the extent of the interest therein of the decedent at the time of his death."

The government's arguments based on the ex-dividend date are immaterial, since that date is of significance only where there is a sale of the stock very near the date. Here there was no such sale and the only important date is the record date.

The problem is answered in Regulations 105, Sec. 81.13:

" * * * Dividends declared to stockholders of record on or before date of the decedent's death and not collected at such date constitute part of the gross estate."

■ The dividends were declared to stockholders of record May 19. The date of record was not on or before the date of the decedent's death, but two days thereafter. Since Barnett was not living on the day on which were determined the persons entitled to the dividends, the dividends did not constitute a part of his estate.

Judgment will be entered in favor of the plaintiff in an amount to be computed in accordance with this opinion and paragraph 15 of the stipulation.