**ESTATE of Eli L. GARBER, Deceased, Farmers Bank and Trust Company of Lancaster, Pennsylvania, Executor, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 12838.

United States Court of Appeals Third Circuit.

Argued June 2, 1959.

Decided Oct. 16, 1959.

See also 271 F.2d 104.

Jules G. Körner, 3d, Washington, D. C. (R. S. Doyle, Washington, D. C., Blair, Korner, Doyle & Worth, Washington, D. C., on the brief), for petitioner.

Kenneth E. Levin, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

This is an appeal from a portion of a decision of the Tax Court of the United States denying a claim for refund by the executors of the Estate of Eli L. Garber for an alleged overpayment of $26,516.55 in estate taxes. The decedent had been employed as the president of both Penn Dairies, Inc. and Garber Ice Cream Company of Lancaster, Pennsylvania, for a number of years. At his death on June 16, 1951, he was serving as president of both corporations. In 1941, Penn established an employee's pension plan to be administered by a pension board. The Garber Company established a similar plan in 1943. Under both plans all contributions to the funds could be made by the respective companies and by their employees. No contributions, however, were made by employees. The funds were created and established by the companies alone. Both plans were designed to meet the requirements of a "qualified trust". See Section 165, Internal Revenue Code, 1939, 26 U.S.C.A. § 165. One of the requirements of a trust if it is to be deemed a "qualified" one is that both the corpus and income of the trust must be used exclusively for the benefit of employees or their beneficiaries. Under Section 23(p) of the 1939 Code, 26 U.S.C.A. § 23(p), the contributions made by an employer corporation to any employees' pension fund must constitute a definite assignment of the funds to the trust and the corporation can have no control over the funds. Moore v. Commissioner, 1941, 45 B.T.A. 1073. With minor exceptions not relevant here, both pension plans, including trust indentures and benefits formulae, are substantially identical in their relevant provisions. The single difference arises from an amendment made to the Penn plan in 1950. This amendment provided that in the absence of the designation of a bene-ficiary by the employee death benefit payments, varying immaterially insofar as this case is concerned, were to be made in the discretion of Penn's pension board to the surviving spouse, children, parents, sisters, or to the estate of the deceased employee. But the original plan, applicable to Garber, provided only that if an employee failed to designate a beneficiary the payments should go to his estate on his death.

The pension plans operate as follows. There is credited annually to each employee's account an amount based on two factors: the employee's salary and the annual profits of the respective contributing companies. If an employee, before retirement, dies or leaves the company permanently for any reason other than discharge for wilful misconduct, he, his estate, or his beneficiaries, as designated by him are entitled to the benefits accrued under the plans either by way of lump sum payment, installment payments, or annuity payments. The percentage the employee, or his beneficiary or beneficiaries are to receive from the accumulated account of each employee qualifying depends on the total length of service completed by the employee. Credits, which, for reasons not pertinent here, are not paid by way of benefits to the employee whose employment terminates, inure to the respective trust funds and are treated as a part of the employers' donations to the funds for the current or succeeding years according to a formula which we need not detail.

If either company should fail to contribute to the respective funds in one or more years, or should be dissolved or become bankrupt, the pension boards may elect to continue the trust funds and on the retirement of any employee shall pay to him as indicated above his aliquot portion of the fund or funds in which he is entitled to participate or make him a lump sum payment. Both plans state that the legal title to the funds remains in the respective trustees and that at no time shall any employee

be deemed to have a vested interest in the assets of the trusts. The plans provide also that the employee's share cannot be attached and that the employee has no right to assign, transfer, or pledge any interest which he may possess in the funds.

Both plans provide that two years employment is necessary in order to render an employee eligible for participation in the fund's benefits and ordinarily the benefits are to commence at age sixty-five. Though the plans are somewhat ambiguous in this regard it would appear that sixty-five years is the "normal" retirement age prescribed by both companies. If, however, the employee is over sixty years of age on becoming eligible to participate he may receive the benefits of the fund on completion of a minimum of five years additional employment or so much additional service as will give him a total of ten years employment with his company. The amount of the benefits to which the employee becomes entitled varies with the length of his employment and the amount of his annual salary, but the pension benefits cannot exceed a specified figure. The employee may receive payments based on his life expectancy, or over a ten-year period, or benefits may be commuted to a life pension as the employee may elect. The life pension is of an amount such as can be obtained from a legal reserve life insurance company at the time of the employee's retirement, estimated, of course, in relation to the reserves accumulated to the credit of the employee.

Both plans provide for benefits on retirement either before or after the retirement age of sixty-five. An employee, who receives the approval of his employer to work beyond the retirement age, may either leave his retirement benefits in the fund at compound interest until such time as he desires the benefits to commence or, at his election, he may immediately begin to collect full or partial benefits from the fund. In any case, if the employee should die prior to the exhaustion of his accrued benefits, the accumulated reserve earmarked for him, less loans, advances, benefits, pension payments or cash payments previously made, are required to be paid to the beneficiaries named by him. If he has designated no beneficiaries payments will be made in accordance with the provisions of the plans as outlined above.

The decedent, Eli Garber, became eligible for full benefits under the Penn plan in 1946 at the age of eighty-two years and under the Garber Company plan in 1948 at the age of eighty-five years. He did not retire from the presidency of either company and he elected not to take any benefits under either company's plan. In 1950, pursuant to his right to designate a beneficiary, he directed the pension boards of both the Penn and the Garber Company funds to pay the death benefits "to any or either of [his] children, [his] children's spouses, [his] grandchildren, [their] spouses and issue, or to the survivor of them, in such proportions, in such amounts and at such times as the Pension Boards [should] determine was for the best interests of the said beneficiaries. * * *" On Eli Garber's death in 1951, his accrued credit in the Penn fund was $60,823.14, and in the Garber Company fund was $24,714.12. These amounts represented the accumulations of his accruals in the funds plus interest. The sums accrued were distributed by the pension boards in equal amounts to each of Eli Garber's three children.

In filing the federal estate tax return Garber's executor included in the gross estate the amounts paid to Garber's children. The executor then filed a claim for a refund in the amount of $26,516.55, this amount representing taxes assessed by the United States against Garber's estate on the amounts of the benefits paid to Garber's children. The claim was rejected. The Tax Court refused to

reverse the Commissioner's ruling.[1] The petition for review followed.

The Commissioner contends that the benefits paid to Garber's children are includible in Garber's gross estate under Section 811, subsections (a), (c), (d), or (f), of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811(a), (c), (d), or (f). Section 811(a) is designed to include within the gross estate all property of a decedent to the extent of his interest therein at the time of his death. Section 811(c) and (d) relate to transfers made by decedent. Section 811(c) concerns itself with transfers intended to take effect by way of possession or enjoyment at or after the death of the transferor. Section 811(d) deals with transfers in which the transferor reserves to himself the power to alter or change the enjoyment of the property. Section 811(f) brings within the gross estate of the decedent any property over which the decedent retained at the time of his death a general power of appointment, such a power coming into existence after October 21, 1942.

Under subsection (a), as well as the other subsections of Section 811, the primary issue in determining the includibility of death benefits derived from pension plans such as those at bar is the extent of the control that the decedent exercised over the pension funds which gave rise to death benefits. Clearly includible in the gross estate are death benefits derived from funds which represent deferred compensation to the decedent, or granted under plans which explicitly gave the decedent direct contractual rights in the funds. See Goodman v. Granger, 3 Cir., 1957, 243 F.2d 264, and Estate of Wolf, 1957, 29 T.C. 441, reversed in part on other grounds not pertinent here, 3 Cir., 1959, 264 F.2d 82. Under Goodman v. Granger, supra,

death benefits were deemed includible in the decedent employee's gross estate even though there was a provision in the agreement calling for forfeiture of the decedent's rights if he had committed certain acts.

The taxpayer points out that the Court of Appeals for the Sixth Circuit held in Glenn v. Hanner, 1954, 212 F.2d 483, affirming D.C.W.D.Ky.1953, 111 F.Supp. 52, that benefits resulting from an employee's death before he reached retirement age under a plan substantially similar to those at bar were not includible in the employee's gross estate under subsections (c) or (d) of Section 811. The Commissioner points out that in the Hanner case the decedent employee never acquired a "vested" contractual interest to pension benefits for he died before becoming eligible for retirement. This is true.[2] Nor did the district court or the court of appeals rule directly on the applicability of subsection (a) of Section 811 although this point was raised by the Commissioner in the district court. In these respects the case at bar differs from Hanner. As to sums representing pension benefits which Garber could have received, but elected not to take down, we entertain no doubt that they are includible under Section 811(a). But as to those portions of the lump sum payments received by Garber's children which can be distinguished, if distinction be possible, from those portions of the lump sum payments which Garber could have taken down as pension benefits, the case at bar cannot be distinguished from Hanner. The decisions of the Court of Appeals for the Sixth Circuit are entitled to great respect but we cannot follow Hanner in deciding the case at bar.

In Dimock v. Corwin, D.C.E.D.N.Y. 1937, 19 F.Supp. 56,[3] a decision construing Section 302 of the Revenue Act of

1. The opinion of the Tax Court was not reported for publication.

2. Albeit Hanner did have the right to receive his accrued credits if he left the company prior to retirement age for good reason.

3. Affirmed on another issue, 2 Cir., 1938, 99 F.2d 799, affirmed 1939, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763.

1926, 44 Stat. 70 (1926), the predecessor of Section 811(a) of the 1939 Act, the court ruled that death benefits paid to the widow of a retired employee in accordance with the employee's pension rights, were not taxable as part of his gross estate. But the plan in the cited case provided, unlike those of Penn and the Garber Company, that the employer retained the right to cancel the employee's pension and death benefits at its option at any time prior to the employee's death. The impetus of this decision led the Internal Revenue Bureau to conclude that death benefits payments should not be deemed to be includible in the gross estate of the decedent when the employer had retained the right to cancel them. The Bureau reached this conclusion on the theory that the employee did not possess sufficient control over the payment of the benefits to warrant inclusion in the employee's gross estate. See G.C.M. 17817, 1937–1 C.B. 281. Subsequently the Bureau altered its position, ruling that so long as an employee possessed the right to designate the beneficiary of death benefits, under a profit-sharing or retirement plan, death benefits paid under such a plan did constitute property includible within the meaning of Section 811(a), despite the fact that the employer retained the right to terminate the plan entirely or to eliminate the payment of death benefits to the beneficiaries of an employee dying prior to the receipt of any disbursements under the plan, so long as the employee's own rights to his accrued credits remained intact. See G.C.M. 27242, 1952–1 C.B. 160. However, G.C.M. 27242 by its terms was not to be applied to estates of persons dying prior to July 1, 1952 and Garber's estate

would be entitled to receive the aid of the previous ruling were it not for the fact that there is nothing in the Penn and Garber Company plans which authorizes those companies to abrogate the right of the employee to designate beneficiaries under the plans. Thus the General Counsel Memorandum relied on by the taxpayer does not aid it.

The decision of the Tax Court in Estate of Saxton, 1949, 12 T.C. 569, is not conclusive under the circumstances of the case at bar since it considers only the applicability of subsections (c) and (d) of Section 811 of the 1939 Code. There are other recent decisions dealing with fact situations practically identical with those before us, including one in this circuit, but they also decide only the applicability of subsections (c) and (d) of Section 811 and do not deal with subsection (a). See Higgs' Estate v. Commissioner, 3 Cir., 1950, 184 F.2d 427; Commissioner of Internal Revenue v. Twogood's Estate, 2 Cir., 1952, 194 F.2d 627; Libbey v. United States, D.C. N.D.Cal.1956, 147 F.Supp. 383.[4] We therefore are without direct judicial authority on this issue. Nor is the legislative history of the statute helpful. Congress itself seemed somewhat puzzled as to how this critical issue should be decided for the Report of the Committee on Ways and Means of the House of Representatives to accompany H.R. 8300, which became the Internal Revenue Code of 1954, expressed doubt, p. 90, as to whether an annuity purchased for an employee by an employer is includible in the gross estate of the employee under the 1939 Code.[5]

■ Two principal assertions of the taxpayer must now be discussed. As we

---

4. The Tax Court in its decision does not attribute includibility of the benefits in Garber's gross estate to any particular subsection of Section 811. This is an undesirable practice. The Tax Court, comprised as it is of experts, should give to the reviewing tribunals the benefits of its knowledge and experience and designate the specific statutory provisions on which it bases its decisions.

5. It is interesting to note that Congress in Section 2039(c) of the Internal Rev. Code of 1954, 26 U.S.C.A. § 2039(c), as amended by the Technical Amendments Act of 1958, 72 Stat. 1622, 1658, pro-

have indicated the taxpayer lays great emphasis on the fact that the trust indentures supporting the plans provide specifically, first, that none of the property comprising the corpora shall vest in the employees and, second, that title thereto shall be vested in the trustees, subject to the control of the pension boards. The thrust of this argument is plain. It constitutes an attempt by the taxpayer to bring the facts of the instant case within the ambit of such decisions as Dimock v. Corwin, supra, in which the employer retained the right to withdraw the plan and destroy the interest of an employee's designee to receive death benefits, at least up to the date of the employee's death.

Under the circumstances at bar, the use of the terms "vested" and "unvested" in characterizing an employee's interest, such as those of Garber, is a sterile exercise for it is the status of Garber's rights in the funds that is determinative, not the label given his interests by the

trust documents. Neither Penn nor the Garber Company could destroy the interests of Garber in the plans once he had become eligible for benefits. Amounts credited or accrued to individual employees would have remained unaffected even had the corporations ceased to have made contributions or have been dissolved. Each of the plans, as we have stated, was supported by "qualified" trusts within the purview of Section 165 of the Internal Revenue Code of 1939. The plans were for the benefit of the corporations' employees and had the trusts been done away with for the benefit of the corporations, the corpora reverting to the corporations, the trusts would have lost their "qualified" status.

As we have said, Garber chose not to receive pension benefits. He was president of both corporations at the time of his death. He did not name specific beneficiaries but designated a group among whom the pension board might distribute his interests at its discretion.[6]

vided that notwithstanding any other provisions of Section 2039 of the Internal Revenue Code of 1954, a successor to Section 811 of the Revenue Code of 1939, annuities or other benefits receivable by any beneficiary except the executor, under most employees' trusts should not be subject to estate tax taxation. This provision was made applicable to all decedents dying after December 31, 1953.

6. Each of the original trust instruments, Article III, Section 3(c) provided:

"Payment of Death Benefits: In event an employee's death occurs prior to his or her retirement or after retirement but before receiving the accumulated reserves in the Fund earmarked for such employee, then any such balance less loans, advances, benefits, payments or cash payments, as directed by the Pension Board shall be paid by the Trustee in cash or one lump sum settlement or in installments periodically, or the value thereof shall be assigned in property, securities, insurance or annuity contracts to such spouse, lineal heir or heirs, dependent or dependents or estates of such deceased employee as more particularly set out in Article II, page 3 of the For-

mula of Benefits, according as shall be directed by the Pension Board."

Article II, Section 5, of each of the Formulae of Benefits provided as follows:

"*Death Benefits:* Where an employee becomes deceased prior to reaching his or her retirement, or after reaching retirement but before receiving the accumulated reserves earmarked for such employee and contributed by the Employer then any such balance less loans, advances, benefits, pension payments or cash payments shall be paid to such spouse, heir or heirs, dependent or dependents of the deceased employee *as the employee shall designate*, in cash, property, securities, insurance or annuity contracts, in one lump sum or by installments over a period of time, and upon failure of the employee to designate a beneficiary, then such remaining credit shall inure to the estate of such deceased employee."

The provisions quoted above were never amended or deleted insofar as the Garber Company Pension Fund was concerned, and were in effect at the time of Garber's death. With respect to the Penn Dairies Pension Trust and Formula of Benefits, however, the above provisions were de-

Garber's benefits under the plans must be regarded as being based on indefeasible rights growing out of his employment by the corporations, akin to deferred compensation payments and as constituting "property" within the purview of Section 811(a). The estate tax is imposed on the "transfer" of a decedent's property. See Section 810, 26 U.S.C.A. § 810. This property, acquired by Garber in consideration of his services as president of the corporations and under the terms of the plans and the trust agreements, became fixed when the corporations made their contributions to the corpora. At these times Garber's aliquot portions of the corpora were credited to and earmarked for him. Garber possessed the right to receive the entire sum of his interests in the corpora by way of lump sum payments if he quitted the companies at the retirement ages applicable to him under the respective plans, or upon other contingencies relating to the funds, hereinbefore set out. He also possessed the right during his lifetime to designate the beneficiaries to receive the lump sum payments and, as we have stated, he directed the pension boards to pay to certain classes of beneficiaries related to him by blood or marriage the credits accrued to him at the time of his death. His children as beneficiaries in fact received the whole of the lump sum payments on his death by direction of the pension boards. We conclude that Garber had a sufficient degree of control over those portions of the corpora which had accrued to him to render the lump sum payments made to his children, the sums in dispute, includible in his gross estate under Section 811(a).

The decision of the Tax Court will be affirmed.

---

leted by an amendment of August 21, 1950, and the following substituted:

"Where an employee becomes deceased prior to reaching his or her retirement, or after reaching retirement but before receiving the accumulated reserves earmarked for such employee and contributed by the Employer, then any such balance less loans, advances, benefits, pension payments or cash payments shall be paid to the employee's designated beneficiary or beneficiaries, and in the absence of a designated beneficiary or beneficiaries, then to any surviving spouse, children, parents, brothers, sisters, or to the deceased employee's estate, according as the Pension Board shall direct."