**BEAVER TRUST COMPANY and Helen D. Stone, Executors of the Estate of Lauson Stone, Deceased, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 16377.**

United States District Court
W. D. Pennsylvania.

June 9, 1960.

**554**

tate taxes assessed and collected pursuant to the Internal Revenue Code of 1939.

Counsel for the parties have stipulated to all the facts. The following questions are presented:

1. Whether a certain death benefit paid to the estate of Lausen Stone pursuant to an annuity contract purchased for the decedent by his employer should have been included in determining the gross estate because it was either deferred compensation to the decedent or he had a vested contractual right to it.

2. Whether the estate of Lausen Stone must exclude from the marital deduction the proceeds of an annuity contract paid over in fee to the surviving spouse even though the provisions of the decedent's will entitled her to only a life interest in such amount.

3. Whether the estate of Lausen Stone is barred from recouping in this action amounts which it previously had paid as income tax upon the proceeds of an annuity contract, when either such income taxes were properly paid, or, assuming that they were improperly paid, the time for filing a claim for refund has expired.

4. Whether the failure to file a timely claim for refund of estate taxes for certain legal expenses incurred by the estate of Lausen Stone preclude this court from assuming jurisdiction to determine the validity of such refund claim.

### History

For purposes of brevity the following abbreviations will be employed:

| | |
|---|---|
| Lausen Stone | — Stone |
| Follansbee Steel Corporation | — Follansbee |
| The Great West Life Assurance Company | — Assurance |

It appears that Stone, the deceased, while serving as President of Follansbee, and at a time that his contract was expiring, was induced to continue his services by virtue of an annuity contract on his life providing him with monthly payments and further providing for Follansbee as beneficiary.

Harold F. Reed, Jr., Reed, Ewing, Orr & Reed, Beaver, Pa., for plaintiff.

Hubert I. Teitelbaum, U. S. Atty., Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

This is a suit, administered by nonjury trial, for the recovery of certain es-

The annuity was effectuated at a meeting of the Follansbee Board of Directors at which decedent was not present.

Upon Stone's demise, Follansbee executed an assignment to the executors of his estate of the annuity policy heretofore described, which in effect was a transfer to decedent's widow.

Subsequent to the assignment of this policy of insurance, these executors were advised by Follansbee that the company was treating the policy as an expense, and the estate should consider the proceeds assigned as additional compensation. Upon receiving this advice, the estate filed an amended income tax return for 1948, including therein the proceeds of said policy as additional compensation to the estate.

On January 5, 1953, the executors of the Stone Estate filed a claim for refund in the amount of $42,081.06, based upon the contention that in the event certain income tax deficiencies which had been assessed against the estate and which were then pending before the Tax Court 19 T.C. 872 should be sustained in whole or in part, it would be necessary to make adjustments in the schedule of debts of the decedent's estate tax return. The executors stated in this claim for refund that it was then impossible to fix a definite amount of refund due because the amount would be dependent on the outcome of the litigation pending before the Tax Court.

On July 22, 1955, the executors of the Stone Estate filed a claim for refund in the amount of $6,679.46. This claim for refund was based on the same contention which had been made in the claim for refund filed on January 5, 1953, except that the amounts claimed by reason of the income tax cases before the Tax Court were made specific inasmuch as they had been finally determined; and further except that the additional contention was made that the estate was entitled to a deduction of $5,000 for professional fees alleged to have been paid to the law firm of Boyle, Feller and Stone, Esqs. These fees were said to have been paid to that law firm for representing the estate in an action known as Fistel, et al. v. Beaver Trust Co., 94 F.Supp. 974, which was commenced in the District Court of the United States for the Southern District of New York, and which action sought recovery on behalf of Follansbee for profits alleged to have been acquired by the decedent in violation of law.

After giving consideration to the above claims for refund, the District Director notified the executors proposing to allow the claims to the extent of approving a refund of $2,112.13 and to reject them as to the balance. The District Director disallowed the item of $5,000 claimed as legal fees paid to the firm of Boyle, Feller and Stone. He also included as part of the statutory gross estate an additional item which had not theretofore been included as part of the decedent's statutory gross estate. The item included was the amount of the proceeds, $10,000, of the annuity policy paid to the estate by Assurance pursuant to the assignment executed by Follansbee.

On April 24, 1950, the Orphans' Court of Beaver County, Pennsylvania, ordered the distribution of the estate. This order awarded the proceeds of the Assurance annuity contract as income to Beaver Trust Company and Helen Darby Stone, trustees, pending final audit of the federal estate tax return and the amended fiduciary income tax return for the year 1948, and, after audit thereof, any balance to Helen Darby Stone, widow of the decedent, as income beneficiary as provided in the last will and testament of Stone.

I

Section 811(a) of the Internal Revenue Code of 1939, provides that property shall be included in a decedent's gross estate to the extent of the interest therein of the decedent at the time of his death, 26 U.S.C.A. § 811(a).

The government contends that the annuity paid to Stone's estate by Assurance was includible in his gross estate predicated upon this provision of law.

Upon a review of the factual circumstances under which the annuity was

credited, it would appear that this action is governed by a recent decision of this circuit which concluded that an annuity perfected under similar conditions was includible in decedent's gross estate, Estate of Garber v. Commissioner, 3 Cir., 271 F.2d 97.

Death benefits includible in the gross estate of the decedent are those derived either from funds which represent deferred compensation to the decedent or granted under plans which explicitly give the decedent direct contractual rights in the funds, Estate of Garber v. Commissioner, supra. I am satisfied that the proceeds of the annuity contract qualify under both.

It is stipulated that plaintiffs were advised by Follansbee that Follansbee treated said annuity as an expense and that the Stone Estate should consider the proceeds as additional compensation. The plaintiffs in conformity with this advice filed an amended income tax return for 1948 including therein the proceeds of the annuity as additional compensation to the estate and paid the income tax thereon. Moreover the minutes of February 28, 1947 specify that the annuity was to be purchased in consideration for decedent's continued services. It is therefore apparent that the parties intended that the annuity represented additional, though deferred, compensation to the decedent. This fact of itself would be sufficient to render the annuity includible in the gross estate.

But even assuming that I were in error in holding the annuity arrangement as deferred compensation, I believe an equally cogent reason exists in concluding that the annuity is includible in the gross estate for the reason that decedent's estate had a direct contractual right to these funds.

Evaluating the actions of the parties and the resolutions formally adopted by Follansbee it appears that in consideration of Stone extending the termination date of his employment contract Follansbee agreed to purchase an annuity contract, which upon his death, would be turned over to his estate. A legally enforceable contract was consummated for a valid consideration, vesting in the decedent a contractual right to said annuity.

## II

■ Section 812(e) (1) (A), provides that, in general, for the purpose of determining the net estate of a decedent, there is allowed as a deduction from the gross estate an amount equal to the value of any interest in property which passes from the decedent to his surviving spouse to the extent that such interest is included in determining the value of the gross estate.[1] The taxpayers here contend that if the proceeds of the annuity contract are includible in the gross estate, then the marital deduction should be increased to the extent that these proceeds passed to the decedent's surviving spouse.

The government contends that the last will and testament of Stone clearly and unambiguously conveyed only an equitable life interest in the income from the proceeds of the annuity contract to his surviving spouse, and that, therefore, such proceeds may not be used to increase the marital deduction because of the express prohibition of Section 812(e) (1) (B) which excludes such terminable interests from the marital deduction.[2]

Viewing the will in its entirety there is no doubt that the will creates a trust, terminable at the time of the spouse's demise.

1. 26 U.S.C.A. § 812(e) (1) (A):
   "(1) Allowance of marital deduction
   "(A) In general. An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate."

2. 26 U.S.C.A. § 812(e) (1) (B):
   "(B) Life estate or other terminable interest. Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest."

I am compelled to conclude, therefore, that the proceeds of the annuity contract have not been conveyed to the spouse as such, but only a life interest therefrom, and that such proceeds may not be used to increase the marital deduction.

Notwithstanding the unambiguous language of the decedent's will and unequivocal state of the Pennsylvania law, taxpayers contend that this court is bound by order of the Orphans' Court of Beaver County, Pennsylvania, entered April 24, 1950, which determined the insurance proceeds to be income and thus to be vested in the spouse as income beneficiary, which order was adverse to the interests of the remaindermen who had a vested interest in the principal, and who, under the order of court, now had no interest in the insurance proceeds. ·

I am not unmindful of the decisions of the Court of Appeals for the Third Circuit which give great weight to the adjudication of a state court, Gallagher v. Smith, 3 Cir., 223 F.2d 218; Babcock's Estate v. Commissioner, 3 Cir., 234 F.2d 837.

In the instant proceeding, however, the Orphans' Court did not undertake to construe the will, nor did it make any express determination or adjudication of the effect of that will upon the disposition of the proceeds of the annuity contract. It merely approved pro forma the schedule of distribution proposed by the executors. Such pro forma determinations have never been binding upon the federal courts, and the Court of Appeals for this Circuit has frequently so held. Falk v. Commissioner, 3 Cir., 189 F.2d 806, certiorari denied 342 U.S. 861, 72 S.Ct. 89, 96 L.Ed. 648; Commissioner of Internal Revenue v. Childs' Estate, 3 Cir., 147 F.2d 368.

I, therefore, conclude that the order of the Orphans' Court of Beaver County is in no way conclusive to this court in the determination of the interest transferred to the spouse in the evaluation of the marital deduction.

## III

Since the Stone Estate reported the insurance proceeds as income to the estate, and paid an income tax thereon, and since it is herewith concluded that said proceeds are includible in decedent's gross estate for federal estate tax purposes, it would appear that the estate is entitled to a credit against the federal estate tax in the amount of income tax paid. Since the claim is in the nature of recoupment, the statute of limitations is not a bar, Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421.

## IV

After the death of Stone, questions arose concerning the federal income tax responsibility of the deceased and this was litigated through Revenue, the Tax Court and the Circuit Court, and in view of the indefiniteness of the outcome of this litigation, the taxpayer filed notice with Revenue that the claim was being made for an adjustment for the federal estate tax liability, and spelled out in the notice the litigation pending as to the federal estate income tax responsibility. In this notice the potential claims under the federal estate tax liability were specifically set forth, but no reference was made to an action pending in the United States District Court in New York against the deceased taxpayer in a stockholders' derivative action.

The litigation in the tax court was resolved in favor of the taxpayer and when the claim was filed for credit in the federal estate tax, the costs and expenses of the litigation were set forth including the amount paid for legal counsel in the defense of the stockholders' derivative action in New York.

The plaintiff contends that since notice was given to the government of a potential credit in the income tax liability phase that said notice tolled the running of the statute of limitations as to all claims which the taxpayer might have for additional credit in the estate tax liability phase. The government contends that since the notice of claim for

additional estate tax credit spelled out the nature and extent of the potential claim and no reference was made to the litigation in New York, the taxpayer is barred from the additional credit claim of the estate tax by virtue of the statute of limitations.

In view of the fact that the government has reopened the Federal Estate Tax Return and has asserted a new claim after the expiration of the statute of limitations, equity and justice would entitle the taxpayer to a credit for a valid claim. A litigant cannot claim the advantages of a defense and deny the same to his adversary, Cuba Railroad Company v. United States, 2 Cir., 254 F.2d 280.

The claim for legal services will be allowed.

An appropriate order is entered.