Pierce **ROSENBERG**, Executor of the Estate of Benjamin Rosenberg, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

No. 59–C–102.

United States District Court E. D. Wisconsin.

Sept. 30, 1961.

Bruno V. Bitker, Robert L. Mann, Milwaukee, Wis., for plaintiff.

Richard T. Mulcahey, Dept. of Justice, Tax Division, Washington, D. C., James B. Brennan, U. S. Atty., Milwaukee, Wis., for defendant.

TEHAN, Chief Judge.

This is an action pursuant to § 1346(a) (1) Title 28 U.S.C. for refund of taxes allegedly erroneously assessed and collected. Pierce Rosenberg (hereinafter referred to as taxpayer), the executor of the Estate of Benjamin Rosenberg, deceased (hereinafter referred to as Rosenberg, or deceased), seeks to recover the sum of $17,952.65. The Commissioner has allowed credit in the amount of $389.16 for Wisconsin inheritance taxes paid, so that the final claim is in the amount of $17,563.49, with interest.

The parties have stipulated to all the facts of the case. Herein now set forth is a recital of such facts, excepting only the phrases of the Trust Agreement and the insurance policy issued on the life of Rosenberg, the material terms of which will be referred to in the discussion hereinafter set forth:

Benjamin Rosenberg died testate on May 3, 1953, a resident of the City and County of Milwaukee, State of Wisconsin. His will was duly admitted to probate by the County Court of Milwaukee County, Wisconsin, on June 15, 1953, and, on the same day, Pierce Rosenberg, decedent's son, was appointed as executor of the Estate of Benjamin Rosenberg. He duly qualified and is still acting as such executor.

The plaintiff, as such executor, obtained an extension of time for filing an estate tax return and, on September 29, 1954, which date was within the extension period, filed an estate tax return on Treasury Form 706 on account of the estate of said decedent with the District Director of Internal Revenue at Milwaukee, Wisconsin. The tax shown to be due on said return, namely, the sum of $1,059.67, was paid on August 2, 1954, and on September 29, 1954.

The decedent, Benjamin Rosenberg, was the president of the Benjamin Rosenberg Company (predecessor of the Grand Apparel Company). In November, 1937, the company established a pension plan for certain of its employees. The plan consisted of a pension trust agreement between the company and a trustee. At the time of its inception and at all times pertinent hereto, Aaron Scheinfeld was the trustee of the pension trust. Pursuant to the agreement the company contributed funds to the trustee in an amount based upon the average monthly compensation of the employees. The company was the sole contributor to the trust fund. With these contributions the trustee purchased commercial insurance policies on the lives of the individual employees. Said policies provided life insurance prior to maturity and retirement benefits after maturity.

On November 30, 1943, the pension trust agreement was amended, and as amended the trust qualified for exempt status under the provisions of § 165 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 165. The decedent, one of the employees covered by the pension trust agreement, was 58 years of age when the trust was established. The trustee purchased for the decedent's benefit a deferred life income policy from Continental Assurance Company of Chicago, Illinois. The maturity date of November 30, 1947, was also the date on which the decedent became eligible for retirement.

The policy also provided that after maturity the decedent was entitled to payments in the sum of $600 per month for the remainder of his life, with a guaranteed minimum of one hundred monthly payments. It further provided that should he die prior to the receipt of one hundred payments, the unpaid install-

ments would be paid to his designated beneficiaries.

The decedent lived past the maturity date of the policy but, at that time, he decided that he would not retire. Accordingly, the trustee (after agreement with the insurance company and the approval of the decedent) elected to have the insurance company hold the maturity value of the policy ($70,740) for a five-year period during which time interest thereon would be paid monthly to the decedent, if living, otherwise to his beneficiaries. The beneficiaries were designated as decedent's wife, if living, otherwise to his children or grandchildren, per stirpes, with cross remainder over. Upon expiration of the five-year period, the decedent was to be paid $505.25 per month for a 15-year period. If he died prior to the expiration of the 15 years, the payments were to be made to the beneficiaries in the manner above designated. The election made by the trustee was irrevocable.

The decedent retired at the end of the aforementioned five-year period. After having received only five of the $505.25 payments he died. He lived for five years and five months after November 30, 1947. The payments are presently being made to his widow. At the time of his death the commuted value of the policy was $68,730.30.

The said commuted value of the policy was not included in the estate tax return as part of the statutory gross estate of the decedent, and, when the return was filed, no tax was paid on account thereof.

Upon examination and audit of the estate tax return, the Commissioner determined that the commuted value of the deferred life income policy was includible in the decedent's statutory gross estate by virtue of the provision of § 811 of the Internal Revenue Code of 1939. This adjustment (in addition to certain other minor adjustments not here contested) resulted in the assessment, on November 28, 1956, of a deficiency in the amount of $16,461. Payment of this deficiency and interest thereon was made in install-

ments of $18,103.44 on September 3, 1956, and $443.52 on December 6, 1956.

On January 31, 1957, plaintiff filed with the District Director of Internal Revenue at Milwaukee, Wisconsin, a claim for refund of $17,952.65.

The District Director of Internal Revenue, by registered mail letter dated May 29, 1957, disallowed said claim for refund in full. No portion of the amount claimed has been refunded or credited to the plaintiff.

The Commissioner contends that the commuted value of the annuity received by Rosenberg's designated beneficiary is includible in his estate under § 811, subsections (a), (c), (d) or (f), of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811(a), (c), (d) or (f). Section 811(a) is designed to include within the gross estate all property of a decedent to the extent of his interest therein at the time of his death. Section 811(c) and (d) relate to transfers made by decedent. Section 811(c) concerns itself with transfers intended to take effect by way of possession or enjoyment at or after the death of the transferor. Section 811(d) deals with transfers in which the transferor reserves to himself the power to alter or change the enjoyment of the property. Section 811(f) deals with powers of appointment and the exercise or retention of such a power.

We think it can be fairly stated that the Commissioner has met with little success in persuading the courts that such benefits from an employees' pension trust are includible in the gross estate on the basis of § 811(c) and (d). Higgs' Estate v. Commissioner, 3 Cir., 1950, 184 F.2d 427, Commissioner v. Twogood's Estate, 2 Cir., 1952, 194 F.2d 627, Dimock v. Corwin, D.C.E.D.N.Y.1937, 19 F.Supp. 56, Herrick v. United States, D.C.E.D.N.Y. 1952, 108 F.Supp. 20, Provident Trust Company v. United States, D.C.E.D.Pa. 1959, 170 F.Supp. 74. Nor has the Commissioner cited to us any authority requiring inclusion under § 811(f).[1]

1. Because of a distinction in facts, we do not consider Estate of Wolf, 29 T.C. 441, cited to us by the Commissioner, as authority.

However, in 1959, the Third Circuit Court of Appeals in Garber's Estate v. Commissioner of Internal Revenue, 3 Cir., 1959, 271 F.2d 97, where as here the same four subsections were relied on, did hold that such death benefits under a comparable pension plan were to be included in the deceased employee's gross estate under § 811(a). Despite the lack of favorable rulings, the Commissioner has not conceded the inapplicability of § 811(c), (d) and (f) and the briefs of the parties have treated upon such sections.

However, in this court's opinion, an analysis of the stipulated facts, the briefs and the oral argument, persuaded this court that the parties hereto recognize that the real question to be here resolved is whether or not the facts in the instant case can be so distinguished in a material respect, as to render the holding and teaching of Garber's Estate, supra, inapplicable.

The facts in the instant case and Garber's Estate, supra, are extensively detailed. For the purposes of this opinion, we believe that we can confine our discussion to the materially comparable facts and to those urged by the plaintiff as distinguishable.

In the Garber case, Garber was the president of two corporations, and the beneficiary of two pension trust funds established for the benefit of employees of both Garber corporations. Rosenberg was also the president of the corporation which instituted the pension trust discussed herein and was a beneficiary thereof as an employee. The Garber trust and the Rosenberg trust were both "qualified" within the purview of § 165 of the Internal Revenue Code of 1939. Both trusts were established for the exclusive benefit of the employees and their beneficiaries.

Both the Garber and Rosenberg trusts operated in material respects in substantially the same manner. Under the Garber plans, there was credited annually to each employee's account an amount based on two factors: the employee's salary and the annual profits of the respective contributing companies. If an employee, before retirement, died or left the company permanently for any reason other than discharge for wilful misconduct, he, his estate, or his beneficiaries, as designated by him, were entitled to the benefits accrued under the plans either by way of lump sum payment, installment payments, or annuity payments. The percentage the employee, or his beneficiary or beneficiaries were to receive from the accumulated account of each employee qualifying depended on the total length of service completed by the employee. Under the Rosenberg trust, there was a variance only in that the employer's contributions were not related to profits.

Both the Garber and Rosenberg trusts provided that should the employer fail to contribute to the respective funds in one or more years, or should be dissolved or become bankrupt, the pension boards (trustee in the Rosenberg trust) may elect to continue the trust funds and on the retirement of any employee, to pay to him as indicated above his aliquot portion of the fund or funds in which he was entitled to participate or make him a lump sum payment. Both plans stated that the legal title to the assets remained in the trustee.

Under the Garber trusts, two years of employment was necessary in order to render an employee eligible for participation in the fund's benefits and age sixty-five appears to be the normal retirement age prescribed. Further under the Garber plans, the amount of benefits to which the employee becomes entitled varied with the length of his employment and the amount of his annual salary, but the pension benefits cannot exceed a specified figure. The employee might receive payments based on his life expectancy or over a ten-year period or benefits may be commuted to a life pension as he might elect. The life pension was of an amount such as can be obtained from a legal reserve life insurance company at the time of the employee's retirement, estimated, of course, in relation to the reserves accumulated to the credit of the employee. The Rosenberg trust varied in these re-

spects: (1) a period of employment of five years was necessary to gain eligibility; (2) the manner and method of payments of benefits; (3) the Rosenberg trust contained a provision that at the end of six years the employee shall have the right to receive from the trustee the full value of such annuities or policy and the full amount of any cash held for his benefit. In respect of eligibility for participation and enjoyment of benefits, the two trusts vary only in respects that we think are immaterial here.

Both plans provided for benefits on retirement either before or after retirement at the age of sixty-five. An employee, who received the approval of his employer to work beyond the retirement age, might either leave his retirement benefits in the fund until such time as he desired the benefits to commence, or at his election, he might immediately begin to collect full or partial benefits from the fund. Further both plans provided that if the employee should die prior to the exhaustion of his accrued benefits, the accumulated reserve earmarked for him, less loans, advances, benefits, pension payments or cash payments previously made, were required to be paid to the beneficiaries named by him.

Under the Garber trusts and under the Rosenberg trust and policy the employee was given the right to designate the beneficiary.

Again there is a parallel in the actions of president Garber and president Rosenberg. Both employees reached the retirement age specified in their respective plans. At such time under the respective trusts, each had the right to receive maximum benefits. Under the Rosenberg trust, Rosenberg could elect to take down the maturity value of his policy.[2] Both Garber and Rosenberg, however, elected to continue in employment and not to take any benefits under their respective trusts. Garber personally exercised the right to designate his beneficiaries some considerable time after becoming eligible for re-

tirement. In Rosenberg's case, a period of four days passed before a designation of beneficiaries was made. The designation was then not made by him personally but by the trustee, Aaron Scheinfeld, who designated decedent's wife, if living, and otherwise his children or grandchildren, per stirpes, as beneficiaries. The document which reflected the trustee's designation of beneficiaries contained a provision "The terms and conditions of this endorsement shall not be subject to change or revocation."

As a result of the comparison made, this court is of the opinion that the facts in Garber are substantially identical with those in Rosenberg, excepting only in respect to the manner and method of making a designation of beneficiaries. It is this matter of difference in the method of making the designation of beneficiaries and the alleged irrevocability thereof in the Rosenberg action that is relied on as so substantially distinguishing the cases as to render the rule in Garber's Estate inapplicable here. For reasons hereinafter stated we must reject the plaintiff's contention.

In our discussion of the applicability of Garber, we believe we can limit ourselves to a treatment of two of its rules. In Garber's case, he became eligible for full benefits under one plan in 1946 at the age of 82 years, and under the other plan in 1948 at the age of 85 years. He did not retire from the presidency of either company and he elected not to take any benefits under either company's plan. The time and manner in which Garber so elected are not mentioned in the opinion but it is clear that there was a definite period of time during which he had an indefeasible right to certain benefits which he elected not to take down.

In respect of these benefits, the Court of Appeals in Garber's Estate, supra, said: 271 F.2d at page 101.

"As to sums representing pension benefits which Garber could have received, but elected not to take down,

---

2. Rosenberg upon reaching retirement age had the right to receive the sum of $70,740 as a lump sum payment under the terms of his insurance policy.

we entertain no doubt that they are includible under Section 811(a)."

In the instant case, it cannot be successfully disputed that at the very least Rosenberg had the indefeasible right to elect to take down $70,740, being the maturity value of the policy during the period from November 30, 1947 to December 4, 1947. Under the aforesaid rule of Garber it must be found that such amount was includible in his gross estate under § 811(a).

We believe that such holding is dispositive of the plaintiff's claim. We will further ground our decision on another rule in Garber. We have heretofore recited sufficient of the material facts as to make readily understandable the factual account contained in the full quotation from Garber: 271 F.2d at page 103.

"Under the circumstances at bar, the use of the terms 'vested' and 'unvested' in characterizing an employee's interest, such as those of Garber, is a sterile exercise for it is the status of Garber's rights in the funds that is determinative, not the label given his interests by the trust documents. Neither Penn nor the Garber Company could destroy the interests of Garber in the plans once he had become eligible for benefits. Amounts credited or accrued to individual employees would have remained unaffected even had the corporations ceased to have made contributions or have been dissolved. Each of the plans, as we have stated, was supported by 'qualified' trusts within the purview of Section 165 of the Internal Revenue Code of 1939. The plans were for the benefit of the corporations' employees and had the trusts been done away with for the benefit of the corporations, the corpora reverting to the corporations, the trusts would have lost their 'qualified' status.

"As we have said, Garber chose not to receive pension benefits. He was president of both corporations at the time of his death. He did not name specific beneficiaries but designated a group among whom the pension board might distribute his interests at its discretion. Garber's benefits under the plans must be regarded as being based on indefeasible rights growing out of his employment by the corporations, akin to deferred compensation payments and as constituting 'property' within the purview of Section 811(a). The estate tax is imposed on the 'transfer' of a decedent's property. See Section 810, 26 U.S.C.A. § 810. This property, acquired by Garber in consideration of his services as president of the corporations and under the terms of the plans and the trust agreements, became fixed when the corporations made their contributions to the corpora. At these times Garber's aliquot portions of the corpora were credited to and earmarked for him. Garber possessed the right to receive the entire sum of his interests in the corpora by way of lump sum payments if he quitted the companies at the retirement ages applicable to him under the respective plans, or upon other contingencies relating to the funds, hereinbefore set out. He also possessed the right during his lifetime, to designate the beneficiaries to receive the lump sum payments and, as we have stated, he directed the pension boards to pay to certain classes of beneficiaries related to him by blood or marriage the credits accrued to him at the time of his death. His children as beneficiaries in fact received the whole of the lump sum payments on his death by direction of the pension boards. We conclude that Garber had a sufficient degree of control over those portions of the corpora which had accrued to him to render the lump sum payments made to his children, the sums in dispute, includible in his gross estate under Section 811(a)."

All of the material facts upon which such holding was based in Garber are

here present in Rosenberg, and require the conclusion that the commuted value of the benefits received by Rosenberg's beneficiary is includible in his gross estate by virtue of § 811(a) since his benefits under the trust were based on indefeasible rights growing out of his employment by the corporation, akin to deferred compensation payments.

The taxpayer has presented arguments to this court in an attempt to distinguish the Garber case from the case at hand. He urges upon us several considerations. In this case, he contends, the trustee is the absolute owner of all the trust assets, including the individual life insurance policies, and is the named beneficiary of the policies. He alone can select the optional method of payment of benefits among the options listed in the trust agreement and in the individual policies. At his discretion he may deliver the annuities or policies to the retiring employee or may hold such annuities or policies and pay to the employee (participant) any moneys received thereunder, or he may convert the annuities or policies into supplementary contracts or installment contracts and either deliver them to the employee or hold them for his benefit.

The employee's only right, taxpayer asserts, is the right to designate a death beneficiary from a limited group of beneficiaries and a lifetime interest to obtain certain portions of the cash value of his insurance policy if his employment is terminated before retirement, which right, however, vanishes with death or retirement. By the irrevocable endorsement of 1947, taxpayer asserts, Rosenberg gave up even this limited right to designate beneficiaries.

Conceding arguendo, the validity of the facts so asserted by the taxpayer, they in no wise alter the fact and conclusion that from November 30, 1947 to December 4, 1947, Rosenberg had an indefeasible right to take down the full maturity value of the policy, but elected so not to do, and by such act the amount he could have taken down was includible in his gross estate.

The defendant, United States of America, however, vigorously resists taxpayer's argument that when the trustee made the settlement election on December 4, 1947, including therein decedent's named beneficiaries, his inclusion of a statement that the terms and conditions of the election endorsement were irrevocable had the effect of stripping decedent of any further right to designate beneficiaries. The defendant first contends that the phrase dealing with irrevocability, although ambiguous, must certainly have been intended to relate only to the basic aim of the endorsement—an election of settlement plans—not to naming of beneficiaries. Secondly, it contends that if the trustee intended to limit the decedent's right to designate beneficiaries he is powerless so to do by virtue of Article Eighth that:

> "Such Employees shall designate as beneficiary or beneficiaries of any death benefits any person or persons related to the participant by blood, marriage or adoption or who are dependent on him, or the personal representative of his estate."

We see no need of discussing the constuction of the terms of the settlement election, but we do agree that the trustee was without right or power under the trust agreement to limit the decedent's right to designate beneficiaries. Not only does the trust agreement preserve the right of designation of beneficiaries to employees, but the policy of insurance also so provides. Irrespective of any holding in this regard, we are of the opinion that we are compelled to adhere to the ruling which we have heretofore made based on Garber that Rosenberg's benefits under the trust must be regarded as being based on indefeasible rights growing out of his employment by the corporation akin to deferred compensation payments and as constituting property within the purview of Section 811 (a).

Counsel for the defendant will prepare findings of fact and conclusions of law and an order for judgment dismissing the action, and submit them to counsel for the plaintiff for approval as to form.