243 F.2d 264
 Eleanor D. GOODMAN, Administratrix of the Estate of Jacques Blum, Deceased, Appellee,
v.
Stanley GRANGER, Collector of Internal Revenue For the 23rd Collection District of Pennsylvania, Appellant.
 No. 12005.
 United States Court of Appeals Third Circuit.
 Argued December 20, 1956.
 Decided April 12, 1957.
 Rehearing Denied May 2, 1957.
 
 M. Carr Ferguson, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., on the brief), for appellant.
 Charles E. Kenworthey, Pittsburgh, Pa. (Louis Caplan, J. Tomlinson Fort, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellee.
 Before GOODRICH, KALODNER and STALEY, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 When does the federal estate tax attach?
 
 
 2
 More specifically stated, when does such tax attach to a decedent-employee's contractual right to annual deferred compensation payments from his employer, payable to his estate after his death?
 
 
 3
 That problem, of first impression, is presented by this appeal by the government from a judgment in favor of the taxpayer, Eleanor D. Goodman, administratrix of the estate of Jacques Blum, deceased, in a suit brought by her in the District Court for the Western District of Pennsylvania to recover estate taxes and interest alleged to have been erroneously assessed and collected.
 
 
 4
 The District Court, subscribing to the taxpayer's contention, concluded as a matter of law that the decedent's contractual right was to be "* * * valued during decedent's lifetime and at the moment before death * * *" and made the factual finding that at such moment the contractual right was "valueless", for reasons which will subsequently be discussed. In its opinion the District Court stated "It must be admitted that if the value in the contracts is to be fixed the moment after death, then the Government is correct in its contention in this case." (emphasis supplied)[1]
 
 
 5
 The undisputed facts may be summarized as follows:
 
 
 6
 The decedent, Jacques Blum, for several years prior to his sudden death of a heart attack at the age of 52 on May 2, 1947, was executive vice-president of Gimbel Brothers, Inc. ("Gimbels") in charge of its Pittsburgh store.
 
 
 7
 On October 19, 1944, June 1, 1945 and May 26, 1946, decedent entered into identical contracts of employment with Gimbel Brothers covering the years ending January 31, 1945, January 31, 1946 and January 31, 1947, respectively. Each contract provided for a basic salary of $50,000 per year, and for additional "contingent benefits" of $2,000 per year for fifteen years "after the employee ceases to be employed by the employer" by reason of death or otherwise. The post-employment "contingent payments" were to be made only if the employee duly performed the services agreed upon and did not engage in a competing business within a specified period after termination of his employment; and they were to be reduced if his post-employment earnings from a non-competing business plus the contingent payments exceeded seventy-five percent of his yearly average compensation under the contracts. Any of the fifteen annual contingent payments which fell due after the employee's death were to be paid to his estate, or to a nominee designated in his will.
 
 
 8
 The third contract for the period of employment ending January 31, 1947 was, by its terms, renewed on a month-to-month basis and was in effect at the time of decedent's death. At the latter time there was every prospect that he would continue to advance in his highly successful career in retailing.[2]
 
 
 9
 After the decedent's death Gimbels paid the $6,000 annual installments provided by the three separate contracts ($2,000 each) to the taxpayer in her capacity as administratrix as they became due. She filed with the Collector a timely federal estate tax return and included the three contracts at a value of $15,000. Upon audit of the return the Internal Revenue Agent in Charge, Pittsburgh, increased the value of the three contracts from $15,000 to $66,710.34, the present worth of $90,000, payable in equal annual installments of $6,000 a year over a period of fifteen years. The increase in the value of the contracts resulted in a deficiency of $15,958.18, including interest, which was assessed against and paid by the taxpayer, and for the recovery of which she brought the suit here involved.
 
 
 10
 At the trial the taxpayer offered the testimony of three witnesses to the effect that the three contracts created no property right having any market value in the decedent while he lived.
 
 
 11
 The government offered the testimony of one witness who testified that the deficiency assessment was based upon his conclusion that the contracts created in the decedent valuable vested interests, subject to being divested, and on that theory the contracts were considered by the government to have the marketable monetary value which it had determined and assessed.
 
 
 12
 The federal estate tax is imposed upon "the transfer" of a decedent's property, Internal Revenue Code of 1939, sec. 810,[3] and the gross estate of the decedent is determined by including "the value at the time of his death of all property" to "the extent of the [decedent's] interest therein." Sec. 811(a).[4] Treasury Regulations 105, sec. 81.10 provide that the measure of value for the purpose of determining the gross estate in federal estate taxation is the fair market value of the estate.[5]
 
 
 13
 The sum of the taxpayer's position is (1) what is taxed is "the value" of the decedent's interest in his contract that "ceased by reason of death", not the value of what is received by the recipient (the administratrix); otherwise stated, "the value" of the decedent's interest in his contract was to be determined as "of the moment before death."
 
 
 14
 The government's position may be summarized as follows: (1) the estate tax is measured by the value of property transferred by death and here an absolute right to the fifteen deferred compensation payments passed by decedent's death to the taxpayer inasmuch as the possibility of forfeiture was extinguished by decedent's death; (2) the government properly valued the right to the deferred compensation payments in the same manner as an annuity for a term certain, i. e. at the commuted value in accordance with the applicable Treasury Regulations.
 
 
 15
 As earlier noted, the District Court agreed with the taxpayer's view. In doing so it stated:
 
 
 16
 "It seems clear under the authorities and the statute and the regulations that the value of the contract rights is limited to the interest of the decedent during his lifetime. That interest, under the testimony and by a fair preponderance of the evidence, is valueless. There was no fair market value on which to base a deficiency assessment." (Emphasis supplied.) It may be noted parenthetically that the taxpayer's testimony as to lack of value, adverted to by the District Court, was premised on the circumstance that the employment contracts specified four contingencies which, if any of them had occurred, would have forfeited the decedent's right to the deferred compensation payments.
 
 
 17
 It is clear that the decedent's interest in the employment contracts was "property" includible in his gross estate under Section 811(a) of the Internal Revenue Code of 1939. Determination of the time when that interest is to be valued is the crux of the dispute.
 
 
 18
 We have had the benefit of thorough discussions by both the government and the taxpayer of the nature of the federal estate tax. Both parties cited Knowlton v. Moore, 1900, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; Young Men's Christian Association of Columbus, Ohio v. Davis, 1924, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558; and Edwards v. Slocum, 1924, 264 U.S. 61, 44 S.Ct. 293, 68 L.Ed. 564. The government cited them for the proposition that the subject of the tax is neither the property of the decedent, nor the property of the legatee, but rather the transfer of assets affected by death. The taxpayer emphasizes the language in these cases which supports the theory that what is taxed is the value of the interest that ceased by reason of death, not the value of what is received by the recipient. We are in accord with both of these general axioms which aid in clarifying the nature of the federal estate tax. However, the cases cited and the principles drawn therefrom are not decisive of the question posed by this case. While the nature of the tax has been discussed in numerous Supreme Court cases, the question of the proper time to determine the nature of a decedent's interest and the value thereof requires a more particularized analysis.
 
 
 19
 The taxpayer has ignored the very nature of the tax which it is urged is dispositive of this case. True, the tax reaches the "`* * * interest which ceased by reason of the death'", Knowlton v. Moore, supra, 178 U.S. at page 49, 20 S.Ct. at page 751 but the reference there was to the distinction between an estate tax and an inheritance tax. The inheritance tax is levied upon the individual shares of the decedent's estate after distribution to the legatees; the estate tax is imposed upon the total estate of the decedent which is transferred to the legatees. Int.Rev.Code of 1939, Sec. 810. The estate tax has been characterized as "an excise imposed upon the transfer of or shifting in relationships to property at death." United States Trust Co. of New York v. Helvering, 1939, 307 U.S. 57, 60, 59 S.Ct. 692, 693, 83 L.Ed. 1104. The estate and inheritance taxes have the common element of being based upon the transmission of property from the dead to the living. New York Trust Co. v. Eisner, 1921, 256 U.S. 345, 41 S.Ct. 506, 65 L.Ed. 963. In Knowlton v. Moore, supra, the Supreme Court recognized this basic principle when it said 178 U.S. at page 56, 20 S.Ct. at page 753:
 
 
 20
 "* * * tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being, and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested."
 
 
 21
 Since death is the propelling force for the imposition of the tax, it is death which determines the interests to be includible in the gross estate. Interests which terminate on or before death are not a proper subject of the tax. Assets may be acquired or disposed of before death, possibilities of the loss of an asset may become actualities or may disappear. Upon the same principle underlying the inclusion of interests in a decedent's gross estate, valuation of an interest is neither logically made nor feasibly administered until death has occurred. The taxpayer's theory of valuing property before death disregards the fact that generally the estate tax is neither concerned with changes in property interests nor values prior to death.[6] The tax is measured by the value of assets transferred by reason of death, the critical value being that which is determined as of the time of death.
 
 
 22
 As was so succinctly stated by Judge Hartshorne in Christiernin v. Manning, D.C.D.N.J.1956, 138 F.Supp. 923, 925:
 
 
 23
 "There can not be a decedent, till death has occurred. A decedent's estate is not transferred either by his will or by intestacy, till death has occurred. * * * And the decedent's interest in the property taxable is to be such interest `at the time of his death' * * *."
 
 
 24
 Here the employment contracts provided for additional "contingent" compensation of $6,000 per year for fifteen years to be paid to Blum or his estate after the termination of his employment by reason of death or otherwise. True, the right to these payments was forfeitable upon the occurrence of any of the specified contingencies. However, forfeiture as a result of the contingencies never occurred during Blum's lifetime, and any possibility of their occurrence was extinguished by his death. Gimbels has been making and the estate has been collecting the payments provided by the contracts. Valuation of the right to these payments must be determined as of the time of Blum's death when the limiting factor of the contingencies would no longer be considered. Death ripened the interest in the deferred payments into an absolute one, and death permitted the imposition of the tax measured by the value of that absolute interest in property.
 
 
 25
 In Mearkle's Estate v. Commissioner of Internal Revenue, 3 Cir., 1942, 129 F.2d 386, we considered the proper method of valuing an annuity upon the death of the decedent which by its terms was payable to the decedent during his life and to his wife for her life. The criterion adopted was the purchase price of an annuity contract upon the life of the wife measured by her life expectancy on the date of her husband's death. There is no reference in this test to the husband's life expectancy upon the date of his death or to the joint expectancies of the decedent and his wife. See Christiernin v. Manning, supra. The value of decedent's interest in the annuity up to the time of his death is not considered, and, as in the situation here involved, death cuts off prior limiting factors.[7]
 
 
 26
 For the reasons stated the judgment of the District Court will be reversed with directions to proceed in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Unfortunately, the District Court's opinion is not reported
 
 
 [2]
 Each of the contracts provided for payment of amounts falling due after the employee's death, in the following language:
 "6. Any of the fifteen (15) annual contingent payments which fall due after the death of the Employee shall be paid either (1) to such person as shall furnish evidence satisfactory to the Employer showing that under the last will and testament of the Employee or for other reason he is duly authorized in law to receive such payment, or (2) to such person as shall furnish the Employer with evidence of appointment as representative of the estate of the Employee. The receipt of any such person for such payments shall release the Employer of any further obligation in respect thereof. `Person' as used in this Article 6 may include one or more individuals, trusts, firms or corporations."
 
 
 [3]
 "Sec. 810. Rate of tax — A tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 812) shall be imposed upon the transfer of the net estate of every decedent, citizen or resident of the United States, dying after the date of the enactment of this title." 26 U.S. C. § 810
 
 
 [4]
 "Sec. 811. Gross estate — The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, whereever situated, except real property situated outside of the United States —
 "(a) Decedent's interest. To the extent of the interest therein of the decedent at the time of his death;" 26 U.S. C. § 811.
 
 
 [5]
 "Regulation 105. Section 81.10: Valuation of property. (a)General. The value of every item of property includible in the gross estate is the fair market value thereof at the time of the decedent's death or, if the executor elects in accordance with the provisions of section 81.11, it is the fair market value thereof at the date therein prescribed or such value adjusted as therein set forth. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. The fair market value of a particular kind of property includible in the gross estate is not to be determined by a forced sale price. Such value is to be determined by ascertaining as a basis the fair market value as of the applicable valuation date of each unit of the property. For example, in the case of shares of stock or bonds, each unit of property is a share or a bond. All relevant facts and elements of value as of the applicable valuation date should be considered in every case."
 
 
 [6]
 Cf. Newell v. Commissioner of Internal Revenue, 7 Cir., 1933, 66 F.2d 102, for the effect of the death of a key officer and shareholder in a corporation upon the valuation of stock in the corporation included in his gross estate. Also, in valuing a partnership interest of a decedent, goodwill attributable to the decedent's personal efforts is not valued due to the decedent's loss to the partnership. Estate of Gannon, 1954, 21 T.C. 1073; Estate of Maddock, 1951, 16 T.C. 324
 
 
 [7]
 In Estate of Harper, 1948, 11 T.C. 717, cited by taxpayer, there were included in decedent's gross estate notes of insolvent makers who by reason of the receipt of legacies under the decedent's will became solvent. The Commissioner valued the notes at face value. The Tax Court held to the contrary, subscribing to the view that the estate tax was "measured by the value of the interest transferred or which ceases at death", viz., the actual value of the then insolvent maker's assets. The result reached is consistent with our approach in the instant case, although the language used by the Tax Court was perhaps something less than fortunate