*Decision will be entered under Rule 50.*

ESTATE OF EDWARD H. WADEWITZ, DECEASED, ROBERT S. CALLENDER, WYNNEFRED W. CALLENDER, CAMILLE M. WADEWITZ, AND FIRST NATIONAL BANK AND TRUST COMPANY OF RACINE, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NETTIE J. WADEWITZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 82859, 93085. Filed March 20, 1963.

*William F. Kolbe, Esq.,* and *Leo C. Duersten, Esq.,* for the petitioners.

*Rex A. Guest, Esq.,* for the respondent.

WITHEY, *Judge:* The respondent determined a deficiency in estate tax in the Estate of Edward H. Wadewitz in the amount of $41,592.68 and this petitioner claims an overpayment in estate tax in the amount of $86,057.88. A deficiency in the income tax of Nettie J. Wadewitz has been determined in the amount of $4,030.54 for the taxable year 1957.

The issues presented for our decision are (1) whether the value of a retirement contract is includable in the gross estate of Edward H. Wadewitz; and (2) in the event we decide that the contract is includable in the decedent's gross estate under section 2033 of the Internal Revenue Code of 1954, whether Nettie J. Wadewitz is entitled to exclude from her gross income for 1957 any portion of the amount received by her pursuant to the decedent's retirement contract. Additional issues presented by the pleadings have been disposed of by concession of the parties.

FINDINGS OF FACT.

The stipulated facts are so found.

The Federal estate tax return for the estate of Edward H. Wadewitz, deceased, was filed with the director of internal revenue at Milwaukee, Wis., on or about July 12, 1956.

Petitioner Nettie J. Wadewitz filed her income tax return for 1957 with the director at Milwaukee.

At all times here pertinent until the time of his death Edward H. Wadewitz was an active full-time employee of Western Printing & Lithographing Company (sometimes hereinafter referred to as Western or the company), a corporation organized under the laws of the State of Wisconsin with its principal place of business in Racine, Wis.

On July 1, 1946, while employed as president of Western, Edward and Western executed a contract, the pertinent provisions of which are as follows:

THIS AGREEMENT, made and entered into this 1st day of July, 1946, by and between WESTERN PRINTING & LITHOGRAPHING COMPANY, of Racine, Wisconsin, (hereinafter referred to as "company") and E. H. WADEWITZ, (hereinafter referred to as "president"),

### WITNESSETH:

WHEREAS, the president has been and will be largely responsible for the profitable operation of the company, and the company desires to insure insofar as possible that it will continue to have the benefit of his services as an officer or employee; and, in the event of his retirement, to keep him available for advice and consultation, to discourage his direct or indirect employment by or rendition of services or assistance to, any competitor of the company and to give him an incentive to refrain from entering the employ of, or directly or indirectly rendering any service, assistance or advice to, any competitor of the company;

NOW, THEREFORE, in consideration of the premises, and the mutual covenants and agreements hereinafter contained, it is hereby agreed between the parties hereto as follows:

### ARTICLE I

Upon the retirement of the president as an officer or employee or upon termination of his service as an officer or employee under circumstances involving a substantial change in his compensation or conditions of his employment without his consent, the company agrees that it will pay to him annually thereafter, for a period of fifteen (15) years, a sum equal to two thousand dollars ($2,000) for each year or fraction thereof, not exceeding six (6), of service after the date hereof, such payments to be made in monthly installments. Retirement may take place any time after six (6) years from the date hereof, or prior thereto with the consent of the board of directors of the company because of the physical or mental incapacity of the president to carry on the duties of his office.

### ARTICLE II

In order to make provision for the performance of its obligation hereunder, the company shall apply for and cause to be issued by a legal reserve life insurance company a suitable life insurance, endowment or annuity policy or policies on the life of the president under the provisions of which the payments herein contemplated shall be available to the company as and when due, all incidents of ownership in such policies to be vested in the company. The company agrees to pay policy premiums on such policy or policies in a minimum amount of

twenty-six thousand six hundred eighty-three dollars ($26,683) a year, beginning with the year 1946, as long as its net earnings for the year preceding such premium payment, after income taxes for that year, as shown by its original income tax return, exceed four hundred seventy-five thousand dollars ($475,-000) ; provided, however, that such premiums shall be paid only to the extent of such excess earnings; and, provided, further, that any deficiency shall be made up in a subsequent year or years to the extent that such excess earnings are sufficient; and, provided, further, that the company may prepay premiums and/or set up a reserve in advance for the payment of premiums to become due in the future.

Except as provided in Article V, the aggregate payments to the president or his beneficiaries named herein, shall not exceed the amount available under said policy or policies which, when issued, shall be identified in a writing to be attached to each executed copy of this Agreement.

The president, or his beneficiaries named herein, shall not acquire any right in or title to any such policy or in any other funds or assets of the company otherwise than by and through the actual payment of the monthly installments payable hereunder.

### ARTICLE III

In the event of the termination of the president's service by retirement, the payments as herein provided shall be made to him only in the event that, and as long as, he is not guilty of violation of any of the following conditions :

(a) Acceptance of employment, either directly or indirectly, with any competitor of the company ;

(b) rendering service, assistance or advice either directly or indirectly to any person, firm or corporation engaged in the same or a similar line of business as the company ;

(c) failure of the president, whenever not physically or mentally incapacitated so to do, to keep himself at all times reasonably available for consultation by the officers and directors of the company ;

(d) employment by the president, without the permission in writing of the company, or any other employee of the company ;

(e) allowance by the president of the use of his name by or in any competitive business.

In the event that the president shall be determined to be guilty of violation of any of the foregoing conditions by arbitration proceedings, as provided in Article IV hereof, and the president does not correct such violation within a reasonable time as determined by the arbiters, the company may thereafter suspend or terminate in whole or in part any benefits or payments hereunder to said president or his beneficiaries named herein.

\*       \*       \*       \*       \*       \*       \*

### ARTICLE V

*Section 1.*

Upon the death of the president before retirement or termination of his service as an officer or employee, there shall be paid to his son, Robert M. Wadewitz and his daughter, Wynnefred A. Callender, share and share alike, in monthly installments, the available proceeds, including any prepaid premiums, of the policy or policies on his life then held by the company hereunder plus the amount of any reserve set up by the company for the payment of premiums. In the event of the death of said son or daughter, his or her share of any remaining install-

ments shall be paid, share and share alike, to the children of the deceased son or daughter living at the time the installments are payable. In the event no such child or children of the deceased son or daughter shall be living and any installments remain payable, they shall be paid to the survivor of the said son and daughter, if living, and if not, to his or her children living at the time said remaining installments are payable, share and share alike. In the event none of the aforesaid persons shall be living and any installments remain payble, then the estate of the last survivor of the president and of such aforesaid persons shall be the beneficiary to receive such payments.

*Section 2.*

Upon the death of the president, subsequent to retirement or termination of his service as an officer or employee, there shall be continued to his beneficiaries, as specified in Section 1 of this Article V, the monthly installments theretofore payable to said president until an aggregate of one hundred eighty (180) such installments have been paid to said president and said beneficiaries.

### ARTICLE VI

*Section 1.*

Neither the president nor his beneficiaries named herein shall have power to transfer, assign, anticipate, mortgage or otherwise encumber in advance any of said monthly installments; nor shall said installments nor any of the policies nor any funds be subject to seizure for the payment of any debts, judgments, alimony or separate maintenance, or be transferable by operation of law in event of bankruptcy, insolvency or otherwise.

*Section 2.*

This Agreement may be amended at any time by mutual written agreement of the parties hereto, but no amendment shall operate to give the president or his beneficiaries named herein, either directly or indirectly, any interest whatsoever in any policy or other funds held hereunder, except the right upon fulfillment of all terms and conditions hereof to receive the monthly payments herein provided.

The contract subsequently was amended twice by the parties. The first amendment to the contract was made on December 20, 1952, the material portion of which provides as follows:

It is agreed by the parties hereto, as of the 20th day of December, 1952, that, upon termination of the President's service after December 19, 1953, the annual payments due under said contract to the President and his beneficiaries for the fifteen (15) year period shall be changed to the following amounts:

| Date of termination of service | Annual amount payable monthly |
|---|---|
| From 12/20/1953 to 12/19/1954 | $12, 350. 64 |
| From 12/20/1954 to 12/19/1955 | 12, 700. 20 |
| From 12/20/1955 to 12/19/1956 | 13, 057. 92 |
| From 12/20/1956 to 12/19/1957 | 13, 421. 40 |
| On or after 12/20/1957 | 13, 772. 88 |

Under the second amendment to the contract, dated September 1, 1954, Edward, with the approval of Western, changed the alternative

beneficiaries previously designated under Article V of the original contract. The pertinent part of this amendment was as follows:

> Upon the death of the president before retirement or termination of his services as an officer or employee there shall be paid to his wife, Nettie M. Wadewitz, and his daughter, Wynnefred A. Callender, share and share alike in monthly installments the available proceeds including any prepaid premiums of the policy or policies on his life then held by the company hereunder plus the amount of any reserve set up by the company for the payment of premiums. In the event of the death of said wife her share shall be added to the daughter's share. In the event of the daughter's death her share shall be paid share and share alike to her children living at the time the installments are payable and in the event no such child or children shall be living any unpaid installments shall be paid to said wife, if living, otherwise to the estate of the last survivor of the president and of such aforesaid persons as are entitled to receive such payments.

The contract executed by Edward and Western has continued in full force and effect since the date of its execution.

Edward never retired from his employment by Western. He died on January 15, 1955, while still serving as an officer and employee. Consequently, no payments were ever made to him by the company under the retirement contract.

The contract, as amended, between Edward and the corporation had a value as of the date of his death of $148,889.67.

Edward left surviving him his wife Nettie and his daughter Wynnefred W. Callender who are the designated beneficiaries under the above-mentioned contract as amended. Pursuant to this contract Western has consistently made the payments called for thereunder to Nettie and Wynnefred.

Pursuant to the provisions of Article II of the contract, Western acquired annuity policies to which it retained ownership and under which it paid all premiums due. Western has at all times been the designated beneficiary under these annuity policies and has received payments thereunder. The amounts received from the insurance companies by Western under the above-mentioned annuity policies and the amounts paid by the corporation to Nettie and Wynnefred under the terms of the contract of July 1, 1946, are as follows:

| Year | Received from insurance companies | Paid under retirement contract to— | |
| --- | --- | --- | --- |
| | | Nettie J. Wadewitz | Wynnefred A. Callender |
| 1955 | $12,599.94 | $5,832.31 | $5,832.31 |
| 1956 | 12,599.94 | 6,362.52 | 6,362.52 |
| 1957 | 12,599.94 | 6,362.52 | 6,362.52 |
| 1958 | 12,599.94 | 6,362.52 | 6,362.52 |
| 1959 | 12,724.99 | 6,362.52 | 6,362.52 |
| 1960 | 12,851.70 | 6,362.52 | 6,362.52 |
| 1961 | 13,028.06 | 6,362.52 | 6,362.52 |

The contract was included in the gross estate of Edward at a value of $148,889.67 on the Federal estate tax return filed by the executors of the estate.

On April 15, 1959, the executors of Edward's estate filed a claim for refund of estate tax in the amount of $66,057.88 with the director of internal revenue at Milwaukee. In the supporting statement attached to the claim for refund, petitioner claimed, among other grounds, that the contract of July 1, 1946, was not properly includable in the decedent's gross estate. The claim was denied by the respondent.

The respondent issued a statutory notice of deficiency to the Estate of Edward H. Wadewitz disallowing a credit claimed on the estate tax return for Wisconsin inheritance taxes. The respondent also issued a notice of deficiency to Nettie J. Wadewitz for 1957 in which he determined that she realized additional income during that year in the amount of $6,362.52 which was not reported by her on her 1957 income tax return.

OPINION.

The principal issue presented is whether the value of the contract executed by Edward and Western is includable in his gross estate. Petitioner Nettie J. Wadewitz contends that in the event we hold the value of the contract to be includable in the gross estate of Edward under section 2033 of the 1954 Code, then under section 72(f)(1) of the Code she is entitled to recover tax free her "investment in the contract."

The respondent has taken the position that the value of the contract here involved is includable in the gross estate of Edward under either the provisions of section 2033 or section 2039 of the 1954 Code.

In support of his contention that the fair market value of the retirement contract at the date of the death of the decedent is includable in the decedent's gross estate under section 2033 of the 1954 Code,[1] the respondent relies primarily on two decisions of the Court of Appeals for the Third Circuit, *Goodman* v. *Granger*, 243 F. 2d 264, and *Garber's Estate* v. *Commissioner*, 271 F. 2d 97, affirming a Memorandum Opinion of this Court. Although each of these cases factually is somewhat similar to the situation presented here, we do not think that either is sufficiently close as to be directly in point.

[1] SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of the interest therein of the decedent at the time of his death.

In *Goodman* v. *Granger*, *supra*, the decedent and his employer had entered into three employment contracts during each of the years 1944, 1945, and 1946. Under each contract the decedent was to receive a basic salary plus additional benefits of $2,000 per year for 15 years " 'after the employee ceases to be employed by the employer' by reason of death or otherwise." The post-employment payments were to be made only if he continued to perform the services agreed upon and refrained from engaging in a competing business within a specified period after the termination of his employment. In the event any of the 15 annual post-employment payments fell due after his death, the payments were to be made to his estate or to a nominee designated in his will.

After decedent's death the $6,000 annual installments provided under the three above-mentioned contracts ($2,000 per year under each contract) were paid to his estate. In the decedent's estate tax return the three contracts were reported and included in his gross estate at a fair market value of $15,000. The Commissioner determined a deficiency on the ground that the fair market value of the three contracts at the date of decedent's death was $66,710.34. The taxpayer did not contest the propriety of including the value of these contracts in the gross estate. The sole issue presented was the fair market value of the employment contracts at the date of death. Consequently we do not regard *Goodman* v. *Granger*, *supra*, as authority for the proposition that the retirement contract here involved is includable in the gross estate of Wadewitz under section 2033 of the 1954 Code.

In *Garber's Estate* v. *Commissioner*, *supra*, the decedent prior to his death was president of two corporations, one a dairy and the other an ice cream company, and was entitled to certain benefits under a pension plan established by each of his employers. Under each plan he was eligible to receive benefits upon reaching retirement age even though he did not retire from his employment. Under one plan, he was entitled to begin making withdrawals in 1946. Under the other plan, he was eligible to commence withdrawals in 1948. Upon retirement from the employment of either company, the decedent was entitled at his election to withdraw his entire benefits in a lump sum. He also had the absolute power to designate and change the beneficiaries to whom the benefits to which he was entitled would be payable in the event of his death. The decedent did not retire from the presidency of either company and he did not elect to withdraw any of the amounts to which he was entitled under either of the plans established by his employers.

The Court of Appeals there held that the total amounts credited to the decedent's account in the pension funds created by his two employers were includable in his gross estate as property held by him at the time of his death under section 811(a) of the 1939 Code. The basis for the holding of the Court in *Garber's Estate* v. *Commissioner, supra,* that the value of his retirement plan benefits was includable in his gross estate was the "degree of control over those portions of the corpora which had accrued to him" as indicated by the broad powers of withdrawal and disposition which were vested in him. The Court pointed out that the decedent there possessed indefeasible rights in the amounts credited to him under the pension trusts; that he was entitled to withdraw certain specified amounts prior to retirement; that upon retirement he was further entitled to withdraw all of the amounts credited to him under either plan in a lump sum; and that he alone possessed the power to designate the beneficiary who would receive benefits upon his death.

The facts in *Garber's Estate* v. *Commissioner, supra,* are sharply distinguishable from those here presented, and we therefore are unable to conclude that that decision should be regarded as controlling in the disposition of the issue before us. Unlike the decedent in *Garber's Estate* v. *Commissioner, supra,* Edward Wadewitz prior to his death was not entitled to receive any part of the benefits provided under the contract of July 1, 1946; he was not entitled to withdraw any of the benefits as a lump-sum distribution upon retirement or at any time; he had only a joint power to designate or change the beneficiary who would receive benefits in the event of his death, rather than a unilateral power to make such designation and his right to receive future payments under the contract was forfeitable in the event of several contingencies. It is obvious therefore that Wadewitz under the retirement contract in question did not possess anything like the broad powers of withdrawal and appointment and the indefeasible right to receive payment which was vested in the decedent in *Garber's Estate* v. *Commissioner, supra.*[2]

The respondent also relies on *Rosenberg* v. *United States,* 199 F. Supp. 367. The decedent there was entitled under a pension plan created by his employer to receive the maturity value of a life income policy. At the date of maturity of the policy the decedent did not withdraw any of the fund of $70,740 to which he was entitled but elected instead to reinvest that amount in an annuity contract payable

---

[2] The joint power of Edward Wadewitz and Western to designate, change, or revoke the beneficiaries who would receive payments in the event of his death is not a general power of appointment and, under section 2041(b)(1)(C)(i), does not of itself subject the property to inclusion in his gross estate. The respondent does not contend to the contrary.

to him in monthly installments after the expiration of a 5-year period. He also had the right unilaterally to designate the beneficiaries who would receive any unpaid installments in the event of his death. The decedent died after receiving only five of the monthly payments. The Commissioner determined that the commuted value of the policy was includable in the decedent's gross estate under section 811 of the 1939 Code. The District Court, citing *Garber's Estate* v. *Commissioner, supra,* held that, inasmuch as the decedent had the absolute and indefeasible power during his life to draw down the maturity value of the policy in a lump sum, it was includable in his gross estate under section 811(a) of the 1939 Code. Since the decedent in *Rosenberg* v. *United States, supra,* possessed the power during his life to withdraw at his own pleasure the fund there in question and actually did so to the extent of the purchase price of the annuities, the facts are clearly distinguishable from those here involved. The decedent in *Rosenberg* had only to ask for the money in order to receive it. He was not required to retire from his employment. Since Edward Wadewitz did not at any time during his life have any comparable power over the funds provided by Western under the contract, we believe that *Rosenberg* v. *United States, supra,* is inapposite here.

The petitioner urges that the interest Edward possessed during his life in the contract of July 1, 1946, was extinguished by his death and was therefore a terminable interest not includable in his gross estate under the general provision of section 2033 of the 1954 Code. It is well established, as petitioner points out, that where a decedent holds only a property interest which terminates at his death, such as a life estate or a power of appointment acquired under the bequest of another, or the two coupled together, such an interest cannot be reached by section 2033 (or its counterpart section 811(a) of the 1939 Code) and is not includable thereunder in the decedent's gross estate. *Helvering* v. *Safe Deposit Co.,* 316 U.S. 56; *Estate of Gertrude Leon Royce,* 46 B.T.A. 1090.

In *Estate of Gertrude Leon Royce, supra,* we held that the right of an income beneficiary of a trust to withdraw from corpus for her maintenance and support, which interest lapsed with her death, was not includable in her gross estate under section 302(a) of the Revenue Act of 1926 (which corresponds to section 811(a) of the 1939 Code and section 2033 of the 1954 Code). In so holding, we stated:

> The rights of the decedent to withdraw the trust corpus terminated at her death. Neither the trust property nor her intangible rights therein were subject to distribution as a part of her estate. The interests of the remaindermen as to them passed directly from the settlor of the trust. At no time was the trust corpus actually the property of the decedent.

\*     \*     \*     \*     \*     \*     \*

Clearly the trust corpus was not includable in the decedent's gross estate * * * because it was neither subject to the payment of charges against the estate nor to distribution as a part of the estate * * *

A life interest owned by a surviving wife, together with unlimited powers of invasion of corpus during her lifetime and with remainders over of any residue which may be left at her death, has likewise been held to be a terminable interest which is not includable in her gross estate (and which therefore does not qualify for a marital deduction under section 812(e)(1)(B) of the 1939 Code). *Estate of Edward F. Pipe*, 23 T.C. 99, affd. 241 F. 2d 210.

In *Estate of Susie C. Haggett*, 14 T.C. 325, the surviving wife of the owner of an annuity was primary beneficiary under the annuity contract. The annuity contract provided that, in the event the annuitant should die before the total annuity payments made by the company equaled the purchase price of the contract, the stipulated quarterly annuity payments would be payable to his surviving wife, Susie C. Haggett. In the event of her death before all of such annuity payments had become payable, the contract provided that the balance of the payments would be payable to certain grandchildren of the annuitant designated in the annuity contract. The Commissioner included in her gross estate one-half the commuted value of the annuity contract as of the date of her death. We there sustained the taxpayer's contention that the decedent's interest in the annuity contract was a terminable interest and was therefore not includable in her gross estate under section 811(a) of the 1939 Code. We pointed out that the power of the decedent to surrender the contract and receive its cash surrender value and her power to alter the designated beneficiaries were not sufficient to require the inclusion of her interest under section 811(a), stating as follows:

The present decedent's interest in the annuity contract was that of a life beneficiary with the power to surrender the contract and receive its then cash value, and also the power to change the beneficiaries. Neither of these powers was exercised by her during her lifetime. But a mere power with respect to property is not such an interest therein as subjects it to the provisions of section 811(a) of the Internal Revenue Code. *Estate of Gertrude Leon Royce*, 46 B.T.A. 1090. No taxable interest in the annuity contract ever belonged to her * * *

Under the contract here in question Wadewitz acquired the right to receive monthly payments for a fixed 15-year term following his retirement or the termination of his employment. In the event of his death prior to the expiration of the 15-year period, the balance of the payments due under the contract was to be paid to certain beneficiaries named in the contract who were jointly designed by Wadewitz and Western. Consequently, his death prior to the expiration of the 15-year term terminated his own interest under the contract and also caused the remainder interests of the designated beneficiaries to be-

come fixed. These beneficiaries were in the position of third party beneficiaries under the contract with Western. Their interests under the contract clearly were not derived from the estate of Wadewitz. No interest in the contract which the decedent possessed during his life was transferable through his estate either by will or by intestacy. The situation here, in our opinion, is essentially the same as if the decedent had received under the will of another a right to receive certain monthly payments for 15 years or until his death and, in the event of his death prior to the end of the 15-year period, the remaining payments due were payable to certain designated beneficiaries. If Wadewitz' interest had been so created, it clearly would represent a terminable interest and as such would not constitute property includable in his gross estate under the general provisions of section 2033 of the 1954 Code. *Estate of Gertrude Leon Royce, supra; Estate of Edward F. Pipe, supra.*

In *Estate of Gertrude Leon Royce, supra; Estate of Edward F. Pipe, supra*, and *Estate of Susie C. Haggett, supra*, the decedents during their lives possessed much broader powers of withdrawal and appointment than were possessed here by Wadewitz. However, in each of those cases the interest of the decedent was one which was extinguished upon his or her death and consequently could not be reached under the general provisions of section 811(a) of the 1939 Code. Under the authority of the above-cited cases, we hold that Wadewitz' interest in the retirement contract terminated upon his death and therefore is not includable in his gross estate under section 2033 of the 1954 Code.

The second major contention advanced by the respondent is that section 2039(a) of the 1954 Code requires the inclusion of the value of the contract in the gross estate of Wadewitz.[3] Petitioner concedes that the payments here in question represent "an annuity or other payment" within the meaning of that section and, further, that such payments were "receivable by * * * [a] beneficiary by reason of surviving the decedent" under a contract executed subsequent to March 3, 1931. It contends, however, that, because decedent died before his retirement, none of the payments called for by the contract were payable to Wadewitz during his life and that, at the date of his death, he did not hold any irrevocable right to receive payments in the future.

---

[3] SEC. 2039. ANNUITIES.

(a) GENERAL.—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

Section 2039 sets forth two basic conditions, one of which must exist for it to become operative. The section provides that the value of the annuity or other payment will be includable in the decedent's gross estate only if it was either (1) "payable to the decedent" or (2) the decedent "possessed the right to receive such annuity or payment."

It is apparent that no amount ever became "payable" to Edward under the terms of his retirement contract with Western. The contract provided that no amount would be payable until Edward retired from full-time employment with the company or ceased such employment without his consent. These events never occurred and, therefore, no payments were ever made to him by Western under the contract. It is obvious therefore, that at the date of his death no amount was "payable to the decedent" under the contract in question. See Estate Tax Regs., sec. 20.2039–1(b)(1)(ii).[4]

As we view the issue presented, the critical inquiry is whether the decedent possessed the "right to receive" payments under the retirement contract in question at the date of his death. As indicated above, it seems apparent that Edward did not possess any *present* or *immediate* right to receive payments during his life. If, in order to receive payment, Edward had only to perform a mere ministerial act, such as filing an election or requesting payment, we doubtless would view the situation differently. But where, as here, it was necessary for the decedent to relinquish his full-time employment and a substantial salary in order to be entitled to payments under the contract and he, in fact, did not leave his employment, it does not appear to us that it realistically can be contended that he had at the time of his death a present right to receive payments under the retirement contract.

The petitioner also concedes, however, that the statutory phrase "the right to receive" can refer to a right to receive payments in the *future*. It insists, however, that, even if the decedent had retired during his life, his rights under the retirement contract nevertheless were forfeitable rights and because of the possibility of forfeiture, the right he held to receive payments in the future cannot constitute a "right to receive" under the provisions of section 2039.

By Example (3) of section 20.2039–1(b)(2) of the Estate Tax Regulations, the respondent indicates that only nonforfeitable contract rights are includable under section 2039:

*Example (3).* Pursuant to a retirement plan, the employer made contributions to a fund which was to provide the employee, upon his retirement at age 60,

---

[4] Sec. 20.2039–1 Annuities.

(b)(1). *Agreements or plans to which section 2039 (a) and (b) applies.*

* * * * * * *

(ii) * * * An annuity or other payment "was payable" to the decedent if, at the time of his death, the decedent was in fact receiving an annuity or other payment, whether or not he had an enforceable right to have payments continued. * * *

with an annuity of $100 per month for life, and which was to provide his designated beneficiary, upon the employee's death after retirement, with a similar annuity for life. The plan also provided that (a) upon the employee's separation from service before retirement, he would have a *nonforfeitable* right to receive a reduced annuity starting at age 60, and (b) upon the employee's death before retirement, a lump sum payment representing the amount of the employer's contributions credited to the employee's account would be paid to the designated beneficiary. * * * Assume that the employee died at age 49 and that the designated beneficiary was paid the specified lump sum payment. Such amount is includible in the decedent's gross estate under section 2039 (a) and (b). * * * [Emphasis added.]

In *Bahen's Estate* v. *United States*, 305 F. 2d 827 (Ct. Cl. 1962), the Court of Claims agreed with this construction of section 2039. The decedent there was entitled to certain benefits under a deferred compensation contract with his employer. He was entitled to receive payments for 5 years in the event he became physically or mentally incapacitated. If the provisions for incapacity payments did not become operative, his employer agreed at his death to make a payment of $100,000 to survivors designated by him. The decedent died while still actively engaged in his employment, and the agreed $100,000 payment was made to his surviving widow. The Court of Claims held that the payment made under the contract was includable in the decedent's gross estate under section 2039 of the 1954 Code and found that the decedent during his life possessed a nonforfeitable right to receive future payments.

We are of the opinion that the Court of Claims in *Bahen's Estate* v. *United States, supra*, and the respondent in his regulations have adopted the correct interpretation of section 2039 in requiring that a decedent's right to receive payments under a contract must be non-forfeitable as a prerequisite to the includability of the value of the contract in the gross estate under that section.

However, it is clear from the record that the right which Edward Wadewitz possessed at the time of his death to receive future payments was a nonforfeitable right. The evidence discloses that his "right to receive" could not possibly be forfeited except by his own election. Under Article III of the contract, it was provided that a forfeiture of his rights would occur if (1) he allowed any competitor of Western to use his name, or (2) if he rendered services to a competitor, or (3) he accepted employment by a competitor, or (4) in the event of his failure to keep himself available for consultation with Western, or (5) in the event he employed any other employee of Western. Each of these contingencies was within the decedent's exclusive control. If he had elected to violate any of the five specified forfeiture provisions, he would have forfeited all of his rights under the contract, but by choosing to refrain from causing the happening of any of them, he preserved all this rights intact. Absent the viola-

tion by Wadewitz of any of the five provisions, Western was at decedent's death bound at all events to make the payments called for by the contract. The parties have stipulated that—

As of March 15, 1962 Western Printing had no knowledge nor has it ever asserted that Edward H. Wadewitz failed to comply with his obligations under the aforesaid employment contract up to the time of his death.

Therefore, under the respondent's regulations and the decision of the Court of Claims in *Bahen's Estate* v. *United States, supra,* which have limited the phrase "right to receive" in section 2039 to nonforfeitable rights, it is our opinion that Edward held at the time of his death a nonforfeitable "right to receive" payment within the meaning of that section.

Section 2039 provides that the period during which the annuity or other payment became payable to the decedent or the period to which his "right to receive" pertains must, to require the inclusion of the value thereof in his taxable estate, be one of three specifically defined periods of time: (1) For his life; (2) for any period not ascertainable without reference to his death; or (3) for any period which does not in fact end before his death.

It is apparent, as petitioner points out, that since the payments under the contract here in question were to be made for a fixed period of 15 years commencing with Edward's retirement, his "right to receive" future payments thereunder had no relation whatever to his life and was measurable without any reference to his death.

Petitioner contends, however, that the decedent's "right to receive" payments did not relate to a "period which does not in fact end before his death." In our opinion the plain meaning of the language of section 2039 requires a contrary conclusion. Edward's right to receive future payments, as noted above, was for a 15-year period which was not to begin until his retirement from Western or cessation of his employment by it. Since he never retired and died while still employed, the period to which his right to receive related was a period *which neither began nor ended prior to his death.*

Petitioner insists that a right held by a decedent "for any period which does not in fact end before his death" within the meaning of section 2039 must create an interest which *commences in possession or enjoyment* during his life.

In support of its contention on this point, petitioner relies upon *Estate of Lena R. Arents,* 34 T.C. 274, revd. 297 F. 2d 894 (C.A. 2, 1962) and *Hubbard's Estate* v. *Commissioner,* 250 F. 2d 492 (C.A. 5, 1957), reversing 26 T.C. 183. Both cases involved tranfers in trust with the reservation of secondary life estates commencing after the

death of another person who in fact survived the grantor. The transfers in each case were made during the interval between March 3, 1931, and June 7, 1932, and were governed by the congressional joint resolution of March 3, 1931. In each case it was held that a transfer in trust with a reserved secondary life estate which did not take effect in possession or enjoyment until after the death of another who in fact survived the transferor was not within the meaning of the phrase "for any period which does not in fact end before his death" and was not encompassed by the joint resolution of March 3, 1931.

There is no evidence here indicating that a transfer of property was made by the decedent and in several cases it has been held that an unretired employee does not have a vested interest in a pension or annuity contract which is capable of being transferred within the meaning of the "transfer" sections (secs. 2036, 2037, and 2038) of the 1954 Code. *Estate of M. Hadden Howell*, 15 T.C. 224; *Estate of William S. Miller*, 14 T.C. 657; *Estate of Eugene F. Saxton*, 12 T.C. 569; *Glenn* v. *Hanner*, 212 F. 2d 483.

Further, it is obvious that Edward did not possess a secondary life estate or *any life interest whatever* under the contract in question. Thus, *Hubbard's Estate* v. *Commissioner, supra*, and *Estate of Lena R. Arents, supra*, are inapplicable to the situation presented here.

Finally, the terms of section 2039 which provide that a mere "right to receive" an annuity or payment is sufficient to require the inclusion in the gross estate of the value of a contract which otherwise falls within the scope of that section clearly refute the petitioner's argument. If a "right to receive" future payments is all that is required to bring the statute into operation, it obviously is not necessary that the decedent's interest under the contract commence in possession or enjoyment during his life.

For the foregoing reasons, we hold that the fair market value of the retirement contract of July 1, 1946, is includable in Edward's estate under section 2039 of the Code.

Because of our holding that the value of the retirement contract is not includable in Edward's gross estate under section 2033 and in view of petitioner's concession that only includability under that section would bring section 72 into play, we do not reach the alternative argument presented by petitioner Nettie J. Wadewitz that she is entitled to a tax-free recovery of her "investment in the contract" under section 72 of the Code.

*Decisions will be entered under Rule 50.*