106 T.C. No. 9


UNITED STATES TAX COURT


ESTATE OF CHARLES K. MCCLATCHY, DECEASED, WILLIAM K. COBLENTZ
AND JAMES MCCLATCHY, PERSONAL REPRESENTATIVE, Petitioner
v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No.  21876-93.              Filed April 3, 1996.


Decedent owned shares of stock that before his death were subject to certain securities law restrictions adversely affecting the value of the shares.  The restrictions were not applicable to the shares in the hands of decedent's personal representatives, so that the per share value automatically increased from $12.3375 to $15.56 at decedent's death.  Held:  the per share value for Federal estate tax purposes is $15.56, since that was the value at the "moment" of decedent's death. Ahmanson Foundation v. United States, 674 F.2d 761 (9th Cir. 1981), applied; United States v. Land, 303 F.2d 170 (5th Cir. 1962), followed; sec. 2033, I.R.C., which mandates the inclusion in a decedent's gross estate of the value of all property to the extent of his/her interest therein at the time of death, does not require a different result; Estate of Harper v. Commissioner, 11 T.C. 717 (1948), explained.

Jeffry A. Bernstein and James P. Mitchell, for petitioner.

Kathryn K. Vetter, for respondent.


                              OPINION

    NIMS, Judge:  In this case, respondent determined a
$5,784,910 Federal estate tax deficiency, and a $1,156,982
addition to tax under section 6662(b)(1).  Unless otherwise
indicated, all section references are to sections of the Internal
Revenue Code in effect at decedent's date of death, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

    After concessions, the sole remaining issue for decision is
whether certain securities law restrictions that applied to
shares of stock of McClatchy Newspapers, Inc. (the Company) owned
by decedent during his lifetime, but which became inapplicable by
reason of decedent's death, have the effect of limiting the value
of the shares for purposes of establishing the Federal estate tax
liability of decedent's estate.

    The parties submitted this case fully stipulated, and the
facts as stipulated are so found.  William K. Coblentz and James
McClatchy, decedent's executors, resided in California when they
filed the petition in this case.  Decedent's will was probated in
the Superior Court of Sacramento County, Sacramento, California.

    The decedent, Charles K. McClatchy, died on Sunday, April
16, 1989.  At his death, he owned 2,078,865 Class B Shares of the
Company.  The Class B Shares were reported by petitioner on Form

706, United States Estate (and Generation-Skipping Transfer) Tax Return at a $12.3375 per share value for a total value of $25,647,996.94.

Decedent was a director, chairman of the board, and chief executive officer (CEO) of the Company at the time of his death. The Company had two classes of common stock: Class A, which was publicly traded, and Class B, which was not.

The Class A and Class B stock had identical dividend rights and equal rights in the event of dissolution or liquidation. The Class B stock had superior voting rights. Class A shareholders were entitled to one vote per share; Class B shareholders were generally entitled to 10 votes per share. Each share of Class B stock was convertible at any time at the option of the holder into one share of Class A stock, subject to the restrictions set out in a Stockholders' Agreement. At the time of his death decedent owned no Class A stock.

Decedent was an Affiliate of the Company for Federal securities law purposes because he was CEO and a director of the Company, a Class B shareholder, and had beneficial ownership of Class B shares as trustee and beneficiary of certain trusts holding Class B stock.

The Class B stock owned by decedent prior to his death was unregistered and restricted for Federal securities law purposes under Rule 144 of the Securities Act of 1933 (S.E.C. Rule 144).

17 C.F.R. sec. 230.144(a)(1) (1989). The same securities law restrictions would have applied if decedent had at any time converted his Class B stock to Class A stock; such converted shares would also have been unregistered and restricted. As a result, the Class B stock (after conversion to unregistered Class A stock) could only have been sold by decedent to the public in accordance with certain volume and manner of sale restrictions under S.E.C. Rule 144, and any donee or transferee of such shares would have acquired the shares subject to such restrictions.

Decedent's personal representatives, acting in that capacity, were not collectively an Affiliate for Federal securities law purposes and, therefore, were not subject to those same securities law restrictions applicable to decedent. The decedent's estate was not an Affiliate for Federal securities law purposes.

The Federal securities law restrictions that affected decedent's ability to sell shares of Class B stock (and shares of Class A stock after a conversion) were not self-imposed or voluntarily made, and did not result from an agreement or arrangement by decedent.

Petitioner and respondent have agreed that the fair value of the Class B Shares for estate tax purposes was $12.3375 if the securities law restrictions that affected decedent's ability to dispose of or otherwise transfer the Class B Shares during life

are taken into consideration.  Petitioner and respondent have further agreed that the fair value of the Class B Shares for estate tax purposes was $15.56 per share if the securities law restrictions applicable to decedent are disregarded for Federal estate tax valuation purposes.

Petitioner argues that the Class B shares subject to securities law restrictions comprise the "interest" in property under section 2033 that was transferred by decedent at death, that the value of such interest is all that is included in decedent's gross estate, and that the value of the interest transferred by decedent is determined by valuing only the restricted share interest of decedent.

Petitioner also urges that assuming, for the sake of argument, valuation under section 2031 is at issue, the proper measure of value for the interest transferred is limited to that which decedent could have realized during his lifetime because the securities law restrictions were not self-imposed, and the facts do not present an abuse situation.

Lastly, petitioner argues that an unrestricted valuation for the Class B shares would be inconsistent with the underlying policy of the unified estate and gift tax system.

Respondent argues that the securities law restrictions lapsed at decedent's death and should not be considered in valuing the Class B shares at the moment of death because the

valuation of decedent's Class B stock for Federal estate tax purposes must take into account any changes brought about by decedent's death.

Respondent also argues that the unified gift and estate transfer tax system does not require that the pre-death securities law restrictions be taken into account because the legislative history does not support petitioner's position, that the willing-buyer willing-seller standard provides an objective test for determining value, and that the same standard is used to determine the amount of a gift and the amount of property includable in the gross estate.

We believe the correct result in this case is pointed to by the decision of the Court of Appeals for the Ninth Circuit (the Court to which an appeal in this case would normally be directed) in Ahmanson Foundation v. United States, 674 F.2d 761 (9th Cir. 1981). For our present purposes, the essential facts in that case were as follows: Ahmanson, at his death, owned 15 percent of a savings and loan association of which 81 percent was owned by HFA, a holding company. Decedent controlled, through a revocable trust, 600 out of 1,000 shares of voting common stock of HFA, and an income interest in 11,000 out of 106,711 shares of nonvoting common stock of HFA. Also held in the revocable trust were all of the shares of Ahmanco Inc., a corporate shell with no

assets prior to Ahmanson's death.  There were 99 nonvoting shares and one voting share of Ahmanco common stock outstanding.

At the moment of decedent's death, Ahmanco, the erstwhile shell, became unconditionally entitled to the 600 shares of voting HFA stock under the terms of certain declarations of trust.  Under the same declarations of trust, Ahmanson Foundation, a charitable trust received the 99 nonvoting shares of Ahmanco.  The one voting share of Ahmanco remained in the Ahmanson family.

On the foregoing facts, Ahmanson Foundation argued that the value of the HFA stock should be disregarded, and that the Ahmanco stock should be valued in separate units, with most of the value being allocated to the block of nonvoting stock going to charity, and a relatively nominal value being allocated to one share of voting stock going to the family.

The Ninth Circuit held that even though Ahmanco had no assets, and therefore no value at the moment before decedent's death, "we must valuate the HFA and Ahmanco stock as of the moment of [the decedent's] death, bearing in mind that the HFA shares, in their entirety, have become an asset of Ahmanco.  In effect, this is to valuate the Ahmanco stock."  674 F.2d at 767.  Thus, the Court valued the Ahmanco stock, not before decedent's death, when the stock had no value, nor after decedent's death, when the ownership became fragmented under the estate plan, but

at the precise moment of death. "Therefore", said the Court, "we are instructed to determine the value at the moment of death of the 600 shares of HFA stock and the 100 shares of Ahmanco stock. In doing so we must take into account any transformations of the property that are logically prior to its distribution to the beneficiaries." Id. (citation omitted).

Unlike the situation in Ahmanson, we are not called upon to consider the effect of any plan of postdeath distribution of decedent's corporate stock in the case before us. We are nevertheless required to determine the consequences of the valuation change that occurred at the moment of death. The Court in Ahmanson states that it is "undisputed" that value is to be determined at the moment of death, citing as settled law an analogous holding in United States v. Land, 303 F.2d 170, 171-175 (5th Cir. 1962).

In the Land case, the Court of Appeals for the Fifth Circuit held that the fair market value of a partnership interest at the death of a partner was its full value in a situation where the partnership agreement provided that if any member wished to withdraw from the partnership during his lifetime, another partner would have the option of purchasing the withdrawing partner's interest at two-thirds of its calculated value. But, at the death of a partner a surviving partner would be entitled to purchase the decedent's interest at its full value.

The Fifth Circuit very succinctly stated the basis for its holding in the following language:

Brief as is the instant of death, the court must pinpoint its valuation at this instant--the moment of truth, when the ownership of the decedent ends and the ownership of the successors begins. It is a fallacy, therefore, to argue value before--or--after death on the notion that valuation must be determined by the value either of the interest that ceases or of the interest that begins. Instead, the valuation is determined by the interest that passes, and the value of the interest before or after death is pertinent only as it serves to indicate the value at death. In the usual case death brings no change in the value of property. It is only in the few cases where death alters value, as well as ownership, that it is necessary to determine whether the value at the time of death reflects the change caused by death, for example, loss of services of a valuable partner to a small business. [303 F.2d at 172; emphasis in original.]

We think "the interest that passes" in the case before us is the value of the shares unencumbered by the securities act restrictions; i.e., $15.56 per share. As stated earlier, this is the value agreed to by the parties if the securities law restrictions applicable to decedent are disregarded for Federal estate tax valuation purposes, as we think they must be. As stated in the Land case, in the few cases where death alters value, it is necessary to determine whether the value at the time of death reflects the change caused by death. In our case, the change in value was caused by death because at the instant of death, the securities law restrictions no longer applied. The valuation depressant occasioned by the securities law restrictions during decedent's lifetime became interesting

history--nothing more--at the instant of his death, and unlike the usual case where death brings no change in value, the restricted value of the shares in decedent's hands while he was living does not serve to control the value transferred.

The parties have brought to our attention, in addition to Ahmanson Foundation v. United States, supra, a number of cases in this Court and others where the holding in the Land case has been cited with approval and relied upon. A non-all-inclusive list of such cases includes: Estate of Bright v. United States, 658 F.2d 999 (5th Cir. 1981); Estate of Chenoweth v. Commissioner, 88 T.C. 1577 (1987); Estate of Harrison v. Commissioner, T.C. Memo. 1987-8. As respondent points out on brief, Propstra v. United States, 680 F.2d 1248 (9th Cir. 1982), does not cite the Land case, but relies heavily on Bright, so it can be said that Propstra relies indirectly on Land.

None of the cases included in the above list involved a fact situation sufficiently analogous to the facts of the instant case to warrant discussion herein, and to do so, we believe, would lengthen this Opinion without providing any equivalent aid to our analysis. We believe the moment-of-death concept as delineated in the Land case has been accepted widely enough by the Ninth Circuit, other Courts of Appeal, and this Court, as to constitute established law, and that it is applicable to the facts of this case. We so hold.

Petitioner cites and strongly relies upon our decision in Estate of Harper v. Commissioner, 11 T.C. 717 (1948). Petitioner cites Harper to support the proposition that for estate tax purposes the value that is transferred under section 2033 is the realizable value of an asset during decedent's life and no more.

Section 2033 provides:

Sec. 2033. Property In Which The Decedent Had An Interest.

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

Petitioner states on brief that "In Harper the Court faced the precise issue of this case". We do not agree.

On the surface, some of the words of Harper might, when read out of context, appear to support petitioner's position. There we concluded our Opinion by saying that

At the time of her death the decedent had an interest in notes the value of which did not exceed the value of the assets held as security therefor plus the net worth of the makers, and that is the interest which ceased at her death. We hold that the petitioner correctly returned the value of the interest of the decedent in the notes at the time of her death for estate tax purposes. [11 T.C. at 720.]

This passage was in response to an argument by the Commissioner that the value of the notes was enhanced because immediately upon the death of the decedent the makers of the notes, who were also Harper's heirs, became invested with more than sufficient assets to satisfy their obligation. Id.

Harper deals with an entirely different situation than that present here.  Our decision in Harper is consistent with Ahmanson Foundation, supra, which states:

> We must distinguish, however, the effect of "predistribution" transformations and changes in value brought about by the testator's death, from changes in value resulting from the fact that under the decedent's estate plan the assets in the gross estate ultimately come to rest in the hands of different beneficiaries. [Ahmanson Foundation v. United States, 674 F.2d at 768.]

The estate tax is a tax on the privilege of passing on property, not a tax on the privilege of receiving property.  "The tax is on the act of the testator not on the receipt of the property by the legatees."  Ithaca Trust Co. v. United States, 279 U.S. 151, 155 (1929).  Unlike Harper, petitioner's case does not involve a change in value resulting from the distribution of decedent's estate.

In Goodman v. Granger, 243 F.2d 264 (3d Cir. 1957), the court evaluated three employment contracts carrying "contingent benefits" of $2,000 annually for 15 years after the employee ceased to be employed by the employer by reason of death or otherwise.  The post-employment contingent payments were to be made only if the employee did not engage in any competing business for a certain period of time and if his post-employment earnings from other work did not exceed a certain amount.  The court held that since the possibility of forfeiture was extinguished by the decedent's death the contract rights should

be given their full value for estate tax purposes. In reaching this conclusion the court observed that

> Since death is the propelling force for the imposition of the tax, it is death which determines the interests to be includible in the gross estate. Interests which terminate on or before death are not a proper subject of the tax. Assets may be acquired or disposed of before death, possibilities of the loss of an asset may become actualities or may disappear. Upon the same principle underlying the inclusion of interests in a decedent's gross estate, valuation of an interest is neither logically made nor feasibly administered until death has occurred. The taxpayer's theory of valuing property before death disregards the fact that generally the estate tax is neither concerned with changes in property interests nor values prior to death. The tax is measured by the value of assets transferred by reason of death, the critical value being that which is determined as of the time of death. [243 F.2d at 268-269; emphasis supplied.]

In a footnote to Goodman v. Granger, the court also observed that the result reached in Estate of Harper v. Commissioner, 11 T.C. 717 (1948), is consistent with "our approach in the instant case, although the language used by the Tax Court was perhaps something less than fortunate." [243 F.2d at 269, fn. 7.]

When the foregoing reasoning is applied to this case, it is apparent that the stock at issue must be valued without the S.E.C. Rule 144 restrictions. The decedent was considered an Affiliate for securities law purposes at the time of his death and therefore pursuant to S.E.C. Rule 144, he was subject to stringent volume limitations, disclosure, and other requirements if he were to dispose of the shares. This stock was transferred at the moment of death and passed to the decedent's estate. The

estate was not an Affiliate and pursuant to S.E.C. Rule 144 could freely sell the shares without regard to such restrictions.

The Court of Appeals in United States v. Land, 303 F.2d at 172, emphasized the fact that the Federal estate tax is imposed on the transfer of property, and reasoned that from this it follows that the valuation of the estate should be made at the time of transfer; i.e., the "instant of death".  Since in the instant case the securities law restrictions evaporated at the moment of death, we hold that the shares must be valued free of the restriction, at $15.56 per share.

As we have previously noted, petitioner makes two additional arguments.  Petitioner emphasizes that the securities law restrictions were not, through some contrivance, self-imposed by decedent.  Consequently, petitioner says, no potential abuse is involved, and the estate should therefore receive the tax benefit of the limitation on value during decedent's lifetime.  We would simply respond by agreeing that in some instances it becomes necessary to look through form to substance where a decedent was in a position during his/her lifetime to manipulate the future value of an asset at death.  We believe, however, that in the absence of atypical circumstances, not present here, the "instant of death" rule enunciated in United States v. Land, supra, and as we have applied it, is an objective test where the question of intent--inherent in contrived value situations--is not relevant.

Petitioner also argues that the general policy of the unified gift and estate transfer tax system (enacted as a part of The Tax Reform Act of 1976, Pub. L. 94-455, sec. 2001, 90 Stat. 1520, 1846) dictates that the restrictions have an effect on the determination of value for estate tax purposes, and that since the securities law restrictions were applicable to gifts by the decedent, they are required to be taken into account in this case for the sake of consistency.  Petitioner's argument is not convincing.

According to a Joint Committee "Blue Book", Congress believed that, as a matter of equity, transfers of the same amount of wealth should be treated substantially the same when transfers were made both during life and at death, or made only upon death.  Congress believed that it was desirable to reduce the disparity of treatment between lifetime transfers and transfers at death through the adoption of a single unified estate and gift tax rate schedule providing progressive rates based on cumulative transfers.  See Staff of Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976 (J. Comm. Print), 1976-3 C.B. (Vol. 2) 537.  Accordingly, the Tax Reform Act of 1976 provided a rate schedule for estate and gift taxes which eliminated the preferential rate for lifetime transfers.  The Tax Reform Act of 1976 also provided for a unified credit against estate and gift taxes.  The amount of the

estate tax was to be determined by applying the unified rate schedule to the aggregate of cumulative transfers during life and at death and then subtracting the gift taxes payable on the lifetime transfers.  General Explanation, supra.

The Joint Committee explanation indicates that Congress intended that the transfer tax for the same amount of property should be the same whether the property was transferred by gift or at death.  There is nothing to suggest that Congress intended to ignore changes in the value of property that were brought about by death.  In the instant case, the value of property transferred would depend on whether the stock was donated before death or whether the stock passed to the estate at the moment of death, since the nature of the property changed at the moment of death.  The unified gift and estate transfer tax system was not, we believe, intended to affect the question of value for transfer tax purposes, whether the tax in question were to be the gift tax or the estate tax.  We consequently cannot accept petitioner's argument to the contrary.

To reflect the foregoing, and concessions,

Decision will be entered

under Rule 155.